YORK COUNTY SAVINGS BANK *vs.* J. W. ROBERTS and another.

York.     Opinion December 8, 1879.

*Mortgage debt.     Appropriation.*

Money once paid, and appropriated by the parties to a mortgage note and endorsed upon it, cannot by a subsequent agreement be transferred to credit of another demand and such paid indebtedness thereby become revived and good against second mortgagees.

After the condition in a mortgage deed has once been performed, the mortgage becomes void, and no agreement of the parties to continue it in force can affect the legal title.

Bill in equity, inserted in writ to redeem real estate from mortgage, heard on bill, answer and proof.     Writ dated December 20, 1878.

Complainant alleges that one Louis Seguin of Biddeford, in the county of York, being seized as of fee of a certain parcel of land, described in said bill, on the 12th day of December, A. D. 1874, conveyed the same in mortgage to the respondents to secure the payment of one thousand dollars, in ten monthly payments of one hundred dollars each, and interest according to the terms of a note of same date, given by said Seguin to the respondents.

That afterwards, on the 16th day of March, 1875, said Seguin mortgaged to the complainants the same premises as collateral security for the sum of ten hundred dollars, then loaned to said Seguin by them.

And that afterwards at different dates other sums, in all about four thousand dollars, were loaned to said Seguin upon mortgage of the same premises to the complainants, which sums are still due and unpaid.

That the defendants reside out of this state, to wit, in Boston, Massachusetts, and have commenced proceedings for the foreclosure of said mortgage to them, under § 5, c. 90, R. S., by publication of a notice to foreclose the same, in a newspaper printed in said Biddeford, the first publication thereof being September 6, A. D. 1878.

That on the 11th day of December, 1878, the complainant made a demand upon the respondents for a true account of the sum due on their said mortgage, and of the rents and profits, and

money expended in repairs and improvements by them, if any, to the end that said plaintiffs might redeem from the respondents' mortgage.

That said respondents refused to furnish or render said account.

That the amount due to said respondents on their said mortgage, as the complainants are informed and believe, is less than one hundred dollars, the other sums once due on said mortgage to the respondents having been paid them by said Seguin.

And the complainants, paying in court into the hands of the clerk at the time of filing their bill one hundred dollars, for the respondents to take such part as may be found due, pray the court to consider the matter — that the respondents be required to answer fully, and that the complainants be allowed to redeem from the respondents, and that they be decreed to release to complainants their right and title in the mortgaged premises, and for such other relief as complainants may be in equity entitled to, and for their costs.

In answer, the respondents say that the mortgage to them was given by said Louis Seguin as set forth in complainants' bill.

That the conditions of said mortgage being broken, they commenced proceedings on the 31st day of August, A. D. 1878, to foreclose the same, as also set forth in complainants' bill.

They allege that on or about December 11th, 1878, they informed the plaintiffs of the amount due on said mortgage by exhibiting to their attorney for that purpose the mortgage note, with the indorsements thereon of all payments made on account of said mortgage, and a paper attached to said note.

A copy of which note and indorsements thereon and said paper attached thereto, are annexed to said answer.

That on the 14th day of June, 1875, an account was existing between them and said Seguin, to the amount of $727.50 due the respondents for merchandise sold by them to said Seguin.

That it was then agreed between them and said Seguin, that a payment of $600 on said account should be made by said Seguin by transferring that sum from the payments made and indorsed on said note, and for that purpose said Seguin gave them the paper aforesaid, marked B.

That said respondents credited said Seguin said sum of six hundred dollars on his said account and at the same time made the indorsement on said note as follows, "Boston, June 14, 1875. Transferred six hundred dollars of the above amount to Louis Seguin's book account.   $600."

That the last three indorsements on said note were made by said Seguin, and received and appropriated by the respondents in part payment of said note so restored to the sum of one thousand dollars.

That on the 20th day of December, A. D. 1878, there was due to them on said note secured as aforesaid by said mortgage, the sum of eight hundred and twelve dollars and ninety-three cents, with eight dollars more for expenses of foreclosure.

That all payments made by said Seguin on said note and mortgage were truly indorsed on said note at the several times they were made, and said note and indorsements thereon and order connected therewith are hereto annexed, and made part of this answer.

That said last three indorsements were not intended by the parties thereto to be applied as payments on said note, with the prior indorsements remaining in force thereon, but as payments on said note considered as restored to the sum of one thousand dollars.

All of which the respondents are ready to prove, wherefore they pray that a decree may be made that the plaintiffs shall pay them said sum of $820.93, and reasonable cost, before the respondents shall be required to discharge said mortgage.   General replication by the plaintiff.

A.

$1000.                              Biddeford, December 12, 1874.

For value received I promise to pay to J. W. and H. Roberts, one thousand dollars, in ten monthly payments of one hundred dollars each, and interest.                              LOUIS SEGUIN.

Indorsements and writing on back of said note.

Biddeford, January 9, 1875.   Received of the within, one hundred five dollars.   $105.

Biddeford, February 16, 1875.   Received of the within, one hundred four and 50-100 dollars.   $104.50.

March 16, 1875. Rec'd one hundred and four dollars. $104.

April 13, 1875. Received one hundred and three 50-100 dollars. $103.50.

May 11, 1875. Received one hundred and three dollars. $103.

June 14, 1875. Received one hundred two and 50-100 dollars. $102.50.

Boston, June 14, 1875. Transferred six hundred dollars of the above amount to Louis Seguin's book account. $600.

January 12, 1876. Received one hundred and thirty-five dollars. $135.

February 14, 1876. Received one hundred four 50-100.

April 10, 1876. Received one hundred eight dollars.

B.     Paper or order annexed to said note.

To J. W. Roberts:

Gents:

Please appropriate $600 which I have paid you on the note, in payment or part payment of the accounts against me June 14, 1875.

LOUIS SEGUIN.

The loan made by the plaintiffs to Seguin as mentioned in plaintiffs' bill, in the mortgage of date March 16th, 1875, was for money paid over to Mr. Thos. H. Cole, to satisfy note or notes to that amount, which he held against said Louis Seguin, secured by mortgage on the same property, covered by plaintiffs' mortgage, and plaintiffs being told by said Seguin that no other incumbrance existed on the property except said mortgage to said Cole, and a small mortgage to one Boulter, which was afterwards paid and discharged, consented to make said loan and take a new mortgage on the property directly to themselves, instead of taking an assignment of said Cole's mortgage, which was prior in point of time to defendants' mortgage. The plaintiffs had no knowledge in fact of the existence of the defendants' mortgage, or that the defendants claimed anything as due upon it from said Seguin, until some time in the summer or fall of the year A. D. 1878. On the 11th day of December, A. D. 1878, the plaintiffs made a written demand upon the defendants for a true account of the sum due on their said mortgage, as set forth in the plaintiffs' bill, but

no account thereof was ever rendered by the defendants. Some week or ten days prior to that date, plaintiffs' counsel called on defendants' counsel and requested him to show plaintiffs' counsel the note and order referred to in defendants' answer, which was done, and some conversation was had between the counsel about the law of the case, but no specific sum was stated or claimed as the amount due the defendants.

The plaintiffs' first mortgage is still all due, and other mortgages, amounting to over four thousand dollars.

For the purposes of this case it is not denied that on the said June 14, 1875, said Louis Seguin owed on account to said J. W. and H. Roberts the sum of six hundred dollars, and that this order was given by said Seguin as it imports on its face.

No payment of said note or account other than appears by said indorsements is proved or claimed as far as this case is concerned.

*J. M. Goodwin,* for the plaintiffs.

*S. W. Luques,* for the defendants, cited *Com.* v. *Ward,* 2 Mass. 397. *Id.* v. *McLane,* 1 Ark. 311. *Richardson* v. *Woodbury,* 12 Cush. 279. *Hubbell* v. *Flint,* 15 Gray, 550.

SYMONDS, J. This is a bill in equity to redeem real estate from mortgage. The only question is, what amount the complainants must pay in order to redeem, or, in other words, how much is due on the mortgage.

The mortgage note was for $1000, dated December 12, 1874, payable in ten monthly payments of $100 each, with interest. The first six payments had been made and indorsed on the note as they fell due, when, on June 14, 1875, the maker of the note gave to the respondents, the payees, an order of that date authorizing them to transfer and appropriate $600, which had been paid on the note, to the payment, in whole or in part, of a certain account which they had against him and which was not secured by the mortgage.

Credit to that amount was thereupon given upon the account, and a memorandum of the transfer of that amount from the indorsements to the credits on book-account was made, on that date, on the back of the note.

It is conceded that, as against the complainants who were then second mortgagees of the same property, such a transfer of credits from the note to the account could not legally be made. To the extent of these payments, the mortgage debt had been extinguished, and could not be revived by agreement of the maker and the payees of the note, to the prejudice of the vested interest of subsequent mortgagees.

Subsequently, on January 12, 1876, $135 ; on February 14, $104.50 ; and on April 10, $108, were paid and indorsed on the note.

It is claimed by the respondents that these payments were made under the belief that the transfer of the $600 was valid, and that the interest-bearing principal had been thereby raised to the original sum of $1000.

Each one of these three payments, it is urged, was intended to be a payment of $100, and the interest then due on a restored principal of $1000.

It is highly probable this was the fact. Each indorsement on the note is equal in amount to the sum of $100, and the interest then due, and the last three payments in each instance correspond in amount with a payment of $100, and the interest on a principal of $1000. Probably the parties to the note, after June 14, 1875, regarded it as restored to its original amount, and supposed the subsequent payments were of $100, and interest. But this is only a probability. There is no division of principal and interest expressed in the indorsements.

The argument seems to be that these last payments, having been applied to the note under a misapprehension as to the validity of the attempted transfer, and under the belief that the principal had not previously been reduced, should not now, when effect cannot legally be given to the transfer of credits, be allowed in reduction of the balance due on the note ;—that if the law cannot allow the agreement, as to the transfer of the $600, to take effect, it can apply the later payments, so as, to that extent, at least, to serve the purpose which the parties had in mind when the order was given.

Notwithstanding the force with which the argument to the con-

trary is urged, we cannot escape the conclusion that the parties themselves have appropriated these payments—that they have applied them upon the note. We assume that the payees of the note had but two claims against the maker, the note and the account. The case shows no other. These payments were not made on the account. They were indorsed in the usual form upon the note. There is a high degree of probability that, if it had not been supposed the transfer was effective, the later payments would have been made on the account rather than on the note ; but such a probability is no substitute for proof that the money was in fact paid on the account, nor can there be anything in it to defeat an appropriation once made, and leave the money unapplied. In order to be applied upon the account, the money must either have been paid upon it, or paid without appropriation. Here we have neither fact.

But it is said these payments were not upon the balance of the note after deducting the $600, but upon the note supposed to be restored to the sum of $1000. The argument is, that it was competent, and no injury to the complainants, for the maker to pay the whole or any part of the $600, twice, if he saw fit ;—and that, the transfer being defeated, these later payments, so far as they go, merely repeat the payment of the $600.

Upon this point, it is enough to say that the case is wanting in proof that either the payees or the maker intended anything of the sort, and it certainly is not a thing to be presumed. It would leave the maker without credit for the amount of the last three payments, either upon the note or the account. It would compensate the payees for a failure to make a valid transfer of $600 from the note to the account, by giving them half that amount twice. We do not think the parties intended double payment of any part of the claim.

The controlling fact in regard to the matter is that these payments when made were applied to the note by the parties themselves. They were received and indorsed upon it. It was a valid claim, which they partially discharged, and the fact that the parties were in error as to their power to change prior indorsements on the note into credits on the account and supposed more due

upon the note than was legally due does not enable the court to treat subsequent payments on the note as mere repetitions of former payments, nor to apply them in discharge of the account. Their application by the parties at the time, to the payment of an existing debt, precludes the interference of the court. Such an error as to the legal effect of the order and as to the amount due upon the note is not a mistake which invalidates a subsequent appropriation of payments. Nor can there be any certainty that the maker of the note would not have insisted on the payments being applied precisely as they were applied, had he known that the order was without effect. Whether in January, February and April, 1876, he was as disposed to pay the account as he was in June, 1875, is a matter about which there is a probability, but no proof.

We see no way in which these three payments can either be applied to the account or treated as a substitute *pro tanto* for the $600 erroneously credited thereon.

The amount which the complainants will be required to pay in order to redeem, will be the amount due according to the tenor of the note, allowing all the indorsements and disregarding the memorandum of June 14, 1875, in regard to the transfer of payments ; and in addition to this the expense of proceedings to foreclose the mortgage, which is agreed to be the sum of eight dollars ($8).

This amount having been brought into court by the complainants, the respondents are to take the same, less costs awarded against them, and the decree will be that the complainants may redeem from the respondents, and that the respondents release to the complainants their right title and interest in the mortgaged premises.

*Decree accordingly.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.