CHARLES S. ENSIGN *vs.* JAMES G. BATTERSON ET UX.

First Judicial District, Hartford, October Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The right of a junior mortgagee to redeem a prior mortgage, is not cut off
by a foreclosure decree in a suit to which the former was not a party;
and this right the mortgagor, although a party to such foreclosure
suit, may afterwards acquire by redeeming the junior mortgagee, in
whose shoes he would then stand.

If the junior mortgagee inherits this right of redemption from the mort-
gagor, the former estate will not, in equity, merge in the latter, if the
preservation of his mortgage lien is essential to the collection of the
debt.

If a junior incumbrancer seeks to redeem the mortgaged premises after
the foreclosure of a prior mortgage in a suit to which he was not made
a party, and after the premises have been quitclaimed to a *bona fide*
purchaser for value, by whom extensive improvements have been made
in the honest belief that he had acquired an absolute and unincum-
bered title in fee (both he and his grantor having overlooked the
recorded mortgage of the junior incumbrancer), he may be required
to pay, in addition to the mortgage debt, the enhanced value of the
property caused by improvements made in good faith by the purchaser
before he learned or had notice of the junior mortgagee's adverse
claim; but fresh expenses incurred after such notice, are at the risk
of the purchaser, and cannot throw an additional burden on the junior
incumbrancer in redeeming, in case his title proves the better.

The right of a mortgagee to redeem prior incumbrances and to foreclose
subsequent ones, is but a means for the collection of his claim against
the mortgagor. While the law will preserve the benefit of that secur-
ity so far as may be necessary to answer the end for which it was
given, yet holders of prior mortgages may have such equities in the
land, or equities against the subsequent mortgagee, as to entitle them
to pay off his claim and become subrogated to his title, even if, in the
absence of such equities, he would have been entitled to pay them off
and become subrogated to their title.

A letter from a mortgagor to a mortgagee, alluding to the mortgage as an
existing one, is not sufficient to relieve the mortgage debt from the
operation of the statute of limitations.

Section 1094 of the General Statutes, relating to evidence in actions against
the representatives of a deceased person, applies to claims presented
against his estate, although not made the subject of an action.

An administrator cannot waive the bar of the statute of limitations in re-
spect to a note of the decedent held by himself.

[Argued October 6th—decided November 5th, 1896.]

Suit to redeem mortgaged premises, also for an account-
ing and other equitable relief, brought to the Superior Court
in Hartford County and tried to the court, *Ralph Wheeler, J.;*
facts found and judgment rendered allowing the plaintiff to
redeem upon payment to the defendants of the full amount
expended by them in the purchase of the land and of the
improvements thereon, and appeal by the plaintiff for alleged
errors in the ruling of the court. *Error and new trial or-
dered.*

It appeared from the decree and finding of facts that the
plaintiff received from his father, Sidney A. Ensign, in 1878,
for a valuable consideration, his note for $2,600, secured by
a third mortgage of a vacant building lot in the city of Hart-
ford. The Society for Savings was the holder of the first
mortgage, and in 1880 brought a foreclosure suit against the
mortgagor, and Maria Pitkin, the second mortgagee, but in-
advertently omitted to make the plaintiff a party, although
his mortgage had been duly recorded in the land records of
Hartford. A decree of foreclosure was obtained, and became
absolute a few months later. A certificate of foreclosure was
made by the Society for Savings, and duly recorded, stating
that its title to the land had become absolute by a decree
rendered in its favor against Sidney A. Ensign and Maria
Pitkin. In 1889, the Society for Savings sold and conveyed
the land to Gayton Ballard, for its full market value, and in
1894 he sold and conveyed it to Mrs. Eunice G. Batterson
for its full market value. Possession was taken by the
Society for Savings as soon as the decree in its favor became
absolute, and was thereafter held continuously by it and its
assigns, in the *bona fide* belief on the part of each that he had
the absolute and unincumbered title to the same, down to
August 24th, 1894.

Shortly after her purchase, Mrs. Batterson commenced to
build an expensive house upon the lot. In August, 1894,
the plaintiff, who lived in another State, but whose business
affairs frequently brought him to Hartford, observed this
building going up, and having ascertained who was erecting
it, wrote to Mrs. Batterson, on August 24th, that he found,

from an examination of the records; that she was the record owner of the lot; that he held a mortgage lien upon it of $2,600 ; that possibly her attorney might have overlooked the record of it, in Vol. 171, page 599 ; and that as some years' interest remained unpaid, he would like some arrangement made about it. At this time she had spent $7,000 upon the building, and contracted liabilities for $12,000 more. The settlement of these liabilities and the stoppage of the work would involve great loss to herself and be of no benefit to any one concerned, and she accordingly, in good faith, to prevent wasteful loss, and not with any intention of improving the plaintiff out of his mortgage, completed the improvements, the total cost being nearly $33,000.

Before she purchased, she employed an attorney at law to examine the records, who reported to her that the Society for Savings owned the land, free of incumbrance ; and she bought on the faith of this report. The Society for Savings and Gayton Ballard had then been in undisturbed possession, paying the taxes on the land annually, for fourteen years, and under the circumstances she was not chargeable with gross negligence in not having discovered the record of the plaintiff's mortgage. The land was never worth as much as was due to the Society for Savings on its mortgage, including its annual payments for taxes, from the date when its foreclosure became absolute up to the time when Mrs. Batterson commenced to build.

The plaintiff was a lawyer. He knew in July, 1880, that the Society for Savings had foreclosed its mortgage, and that he had not been made a party to the proceeding. He knew that it took possession in the belief that its title was absolute, and was expending a large amount for taxes. He knew in 1893 of its conveyance to Ballard, and that the latter paid the fair market value of the lot, supposing that he was acquiring an absolute and unincumbered title. He never asserted any title to the property before August 24th, 1894, but in this he intended no fraud, being of opinion that he was under no duty to give any one notice of a recorded mortgage. He always had intended to enforce his lien and realize on his

security, if the property rose sufficiently in value.   He knew
that it was likely that the lot would be at some time improved
by some one who bought it in the belief that he was acquir-
ing an absolute and unincumbered title; and this was one of
the grounds on which he based his hope of eventually col-
lecting his debt in whole or part.   As soon as he learned of
the improvements begun by Mrs. Batterson, he deemed it his
duty to notify her of his rights, and did in fact give such
notice within a reasonable time thereafter.

Small payments on account of interest had been made to
him by his father down to 1881.   His mortgage originally
included two other parcels of land in Hartford, but these he
had released from its operation, in 1879, by quitclaim deeds,
given without consideration, and duly recorded.   On the
margin of the record of his mortgage, the town clerk had
made a note that it was "Part Discharged," with a reference
to the record of the first of these release deeds.

The plaintiff's father died in April, 1893, intestate, leav-
ing a widow, and the plaintiff as his sole heir.   The plaintiff
was the administrator on the estate, which was of the net
value of $35,000.   His father had, within six years prior to
his decease, promised him orally to pay the mortgage note,
and take the mortgage.   In May, 1887, he had written a
letter to the plaintiff, inclosing a quitclaim deed for execu-
tion, in which he stated that the land was one of the parcels,
a mortgage on which had been foreclosed without making
the plaintiff a party; that the quitclaim was wanted to per-
fect the title; that he should get $20 or $25 for it, or about
what it would cost to obtain another foreclosure; that "this
is not the claim on which you hold a $2,600 mortgage;" and
that there were "several others which we will get something
out of, also."

At the time of the trial of the present action in the Supe-
rior Court, the value of the land without the improvements
was $11,000; and the cost of Mrs. Batterson's improvements
upon it, with interest, was $34,564, which was also their
value.   She paid $9,912 for the lot.   The first mortgage to

the Society for Savings, with interest and the taxes paid, would have amounted, at the date of the decree, to $12,251.

Mrs. Batterson, her husband, and the Society for Savings were made defendants.

The court admitted, against the plaintiff's objection, evidence as to the belief of Mrs. Batterson that she was purchasing a clear and absolute title, and of the report made to her by her attorney; as to the amount and nature of her expenditures on the property since her purchase; and as to the time within which they were made.

The plaintiff claimed that he could not be charged with any of these improvements, and certainly with none made after August 24th, 1894.

The relief sought in his complaint was an accounting; leave to redeem the Society for Savings mortgage; a conveyance of the mortgaged premises to him, upon payment of the sum fixed for redemption; in default of such conveyance, a foreclosure of his mortgage; and possession of the mortgaged premises.

The decree was that he might redeem "said property" upon the payment to Mrs. Batterson of $44,476.35, being the sum due her for her actual expenditures in purchasing and improving it, with interest; that upon such payment by a day set the defendants should convey "said premises" to him, in default of which they should be "foreclosed of all their right, title and interest;" and that if the amount fixed for redemption were not paid by the day named, the plaintiff should be forever foreclosed of all right, title and interest in the mortgaged premises. From this decree the plaintiff appealed.

*Lewis E. Stanton*, for the appellant (plaintiff).

The land records of this State evince the true title to the land. *Middletown Bank* v. *Fellows*, 42 Conn. 49. The purchaser will be presumed to have examined the record, and will be regarded as notified of all equities. *Hunt* v. *Mansfield*, 31 Conn. 488; *Wheaton* v. *Dyer*, 15 id. 311; *Lewis* v. *Hinman*, 56 id. 55. The privilege of redemption from the

foreclosure of a senior mortgage, is a right. Indeed, it is regarded as an absolute right, subject however, to such terms as a court of equity may impose upon full investigation of the facts. General Statutes, § 1368; *Haskell* v. *Bailey*, 22 Conn. 572; *Jarvis* v. *Woodruff*, 22 id. 548; *Goodwin* v. *Keeney*, 47 id. 496; 2 Jones on Mort. § 1145. It is now said that these improvements made by a stranger, can be used to defeat the mortgage security of the plaintiff. On the contrary, improvements made by a mortgagor, or owner of the equity of redemption, enure to the mortgagee. The mortgagor cannot improve the mortgagee out of his estate. He is not entitled to be allowed for improvements made upon the property, unless there be a covenant in the mortgage for such allowance in case of foreclosure. 1 Jones on Mortg. § 681; *Childs* v. *Dolan*, 5 Allen (Mass.), 319. Twenty-seven thousand dollars of these improvements were placed upon the land, after actual notice of the plaintiff's mortgage, given by letter, on August 24th, 1894. The owner of the equity of redemption is not entitled as against the mortgagee, to be allowed for improvements made upon the premises. *Phillips* v. *Holmes*, 78 N. Car. 191; *Holmes* v. *Morse*, 50 Me. 102; *Russell* v. *Blake*, 2 Pick. (Mass.) 505; *Hughes* v. *Edwards*, 9 Wheat. 199. Even if improvements are to be allowed, the standard adopted by the court was entirely incorrect. The plaintiff had taken security on a vacant lot. Improvements, if allowed at all, ought to be allowed only so far as they enhance the value of the lot. *Morgan* v. *Walbridge*, 56 Vt. 405; *Higgenbottom* v. *Benson*, 24 Neb. 461; *Bright* v. *Boyd*, 1 Story (C. C.), 478. Even if improvements are allowed, the amount is not the actual cost, but that which has brought an actual value to the land. The rule is "not the cost indeed, but so far as they were permanently beneficial to the estate, and enhanced its value." *Parsons* v. *Moses*, 16 Ia. 445; *Harper's Appeal*, 64 Pa. St. 315; *Smoot* v. *Smoot*, 12 Lea (Tenn.), 274; *Alston* v. *Boyd*, 6 Humph. (Tenn.) 504; *Hughes* v. *Edwards*, *supra*. A costly palace erected upon a vacant lot does not increase the value of the land itself. On the contrary, it helps to destroy it. A mortgage security is

not in this manner to be destroyed. The decree should be reversed, and the plaintiff should be allowed to redeem and foreclose by payment to Mrs. Batterson of the price which she paid for the land, with interest and taxes thereon; or at most the amount due upon the first mortgage, with interest and taxes.

*Lewis Sperry*, for the appellees (defendants).

If a defendant in possession has in good faith made permanent improvements upon land, believing that he was the owner, the actual owner or junior incumbrancer cannot recover the land without first allowing for such improvements. 2 Jones on Mort. (4th ed.) §§ 1126, 1127, 1128; 3 Pom. Eq. Juris. (2d ed.) § 1241; *Thomas* v. *Evans*, 105 N. Y. 614; *Canal Bank* v. *Hudson*, 111 U. S. 82; *Hicklin* v. *Marco*, 46 Fed. Rep. 424; *McSorley* v. *Larissa*, 100 Mass. 270; *Freichnecht* v. *Meyer*, 39 N. J. Eq. 551; *Hadley* v. *Stewart*, 65 Wis. 481, 27 N. W. Rep. 340; *Green* v. *Dixon*, 9 Wis. 485; *Mickles* v. *Dillaye*, 17 N. Y. 80; *Higgenbottom* v. *Benson*, 24 Neb. 461; *Preston* v. *Brown*, 35 Ohio St. 28, 29. The defendants are entitled to the benefit of the statute concerning betterments. Gen. Stat. § 1065. Although originally intended to be applied by courts of law, the statute should be recognized by courts of equity, and applied by analogy in such a way as to secure the remedy intended by the Act. Such is the rule in Massachusetts, as given in *McSorley* v. *Larissa, supra*. The plaintiff is estopped by his conduct from any right whatever to redeem. 2 Pom. Eq. Juris. (2d ed.) §§ 801, 821; 1 id. § 418; *Townsend* v. *Vanderwerker*, 160 U. S. 171, and cases there cited; *Brown* v. *County of Buena Vista*, 95 U. S. 157; 12 Amer. & Eng. Ency. of Law, 549.

BALDWIN, J. On August 24th, 1894, the plaintiff held a mortgage lien upon the land now in question, and also—as against that mortgage—the fee-simple estate in the same land. The mortgage he received from his father, for a valuable consideration, in 1878; the fee-simple estate he had inherited as his sole heir at law, in 1893.

The merger of the two estates which would naturally fol-

law from unity of ownership, was, in equity, prevented by the fact that it would result in the virtual destruction of the interest derived from the mortgage lien. The delivery of the first mortgage to the Society for Savings left in the mortgagor an equity to redeem that mortgage, which, as against every one but the mortgagee, was equivalent to a fee-simple estate. The delivery of the plaintiff's mortgage left also in the mortgagor an equity to redeem it, which, as against every one but the mortgagees, was equivalent to a fee-simple estate. The foreclosure of the first mortgage cut off the original equity to redeem it; but as the plaintiff was not made a party to the suit, it did not affect the equity to redeem his mortgage. The mortgagor, therefore, had he redeemed the plaintiff's mortgage, could have proceeded to redeem the first, because that had been the right of the subsequent mortgagee, in whose shoes he would then stand. *Goodman* v. *White*, 26 Conn. 317; *Colwell* v. *Warner*, 36 id. 224; *Loomis* v. *Knox*, 60 id. 343.

The plaintiff's mortgage, having been duly recorded in 1878, every subsequent purchaser of any interest in the land took with constructive notice of its existence. The defendants who are now in possession cannot defeat his lien on the ground that they had no actual knowledge of the incumbrance, because the attorney at law, whom they employed to search the title, failed to discover or to disclose it. *Booth* v. *Barnum*, 9 Conn. 286, 289. Whatever in fact appeared upon the records, they were, so far as his legal title is concerned, conclusively presumed to know. *Hunt* v. *Mansfield*, 31 Conn. 488.

At the time of Sidney A. Ensign's decease, the statute of limitations would have been a defense to any action on the note for $2,600, which the plaintiff's mortgage was given to secure, unless its effect could have been avoided by proof of a new promise. The letter of May, 1887, was not sufficient evidence of such a promise; and oral acknowledgments by a debtor cannot, under our statutes, support an action against his estate. General Statutes, § 1094. This section, while in terms referring only to actions against the representatives

of a deceased person, must, to carry out the manifest intent of the legislature, be construed to embrace claims presented against estates; for no such claim ought to be allowed if it could not be enforced by an appropriate suit. An executor or administrator is in the position of a trustee, and cannot give away the rights of others. *Peck* v. *Botsford*, 7 Conn. 172, 178. The plaintiff, it is true, was the sole heir to his father's estate, as well as the administrator; but had he sought to diminish it by exhibiting and allowing this note, it would have reduced the share which the widow would otherwise enjoy. His mortgage therefore was his only means of collecting the debt; and the lien which it had given him upon the land was still in full force, the mortgagor having been in possession and having made payments on the note within fifteen years prior to the commencement of this action.

The mortgage of the Society for Savings never having been foreclosed against the plaintiff, it remained, as against him, a mortgage still. The conveyances to Ballard and to Mrs. Batterson were each in the form of a quitclaim deed of all the grantor's right, title and interest in and to the premises released, and therefore covered any interest derived from the first mortgage.

Mrs. Batterson was then, as respects the plaintiff, in the position of a prior mortgagee in possession. He had the right to redeem her mortgage; but upon bringing his action for that purpose in a court of equity, he came under the operation of the rule that he who would have equity must do equity. She had made improvements upon the land mortgaged, which greatly enhanced its value, and had begun to make them in good faith, believing that she was the absolute owner of the lot. Her constructive notice of the plaintiff's lien, given by the record of his mortgage, was sufficient to make his legal title fully effectual against her; but her want of actual knowledge was important in determining the equities between them which were to be settled by the decree.

Until August, 1894, the plaintiff was under no obligation to give any other notice of the existence of his mortgage to prior incumbrancers or their grantees, than that afforded by

the land records of the town. At that time he first learned that Mrs. Batterson had begun to make expensive improvements upon the mortgaged premises, and he wrote promptly to inform her of his claim of title.

It was held by this court in one of its early decisions, that a junior incumbrancer, seeking to redeem from a mortgagee in possession, who had improved the property, must pay the value of the betterments. *Wheat* v. *Griffin*, 4 Day, 419. The plaintiff in that action had asked in his bill for an account both of the rents and profits and the betterments, and therefore could not complain if he were taken at his word. In ordinary cases at the present time, a mortgagee in possession is not thus permitted to profit by improvements made without the acquiescence of the party seeking to redeem; but it is often equitable that he should be, when he acted in the honest, though mistaken, belief that he was the absolute owner, with an unincumbered title. In the Roman law, this equity was deemed so clear, that if the real owner brought suit for the land, while refusing to allow for the added value which the betterments had given it, this was treated as a fraud on his part, which justified the court in rejecting his demand. Dig. 41, 1, *de acquirendo rerum dominio*, 7, § 12. American law, without either imputing fraud, or requiring proof of it, is content with holding it inequitable to allow a man to be enriched under such circumstances by expenditures which another has made, as he supposed, for his own benefit, while acting in good faith and in ignorance of any adverse claim or title. 3 Pomeroy's Equity Jurisprudence, § 1241; 2 Jones on Mortgages, § 1128; *Mickles* v. *Dillaye*, 17 N. Y. 80; *Thomas* v. *Evans*, 105 id. 601, 614, 59 Am. Rep. 519, 12 Northeastern Rep. 571.

The decree of the Superior Court therefore rightly took into account the betterments which Mrs. Batterson had placed upon the land. But there was error in including such as were added after her receipt of the letter of August 24th, 1894. That gave her full notice of the plaintiff's lien, and of what he claimed under it. For what she had laid out up to that time in improving the property, and for liabilities already.

incurred for the same purpose, she had an equitable right to
be made good, to the extent of the enhancement of value, in
accounting with the plaintiff.    But she could not, to prevent
waste and loss to herself, should her title prove the better, go
forward and incur new expenses, which, in a contrary event,
would throw on him any additional burden.    To allow that
would be to permit her to speculate on the chances of a law-
suit, at his risk.    *Ramsden* v. *Dyson*, L. R. 1 H. L. 129, 140;
Inst. of Justinian, II. 1, 30; Dig. VI. 1, *de rei vindicatione*,
37; Jones on the Law of Real Property in Conveyancing,
§1528.    Her position is analogous to that of one who, after
making a contract to purchase, is notified of a defect of title,
but still goes forward and pays the agreed price.    It is well
settled that such an one cannot claim the rights of a *bona fide*
purchaser.    *Hayden* v. *Charter Oak Driving Park*, 63 Conn.
142.

It is found by the Superior Court that a stoppage of the
work would have been of no benefit to any one concerned;
but it also appears that its completion involved an additional
outlay considerably exceeding the value of the lot.    It is
obvious that this wholly changed the character of the plain-
tiff's security.    He might have been willing and able to re-
deem by reimbursing her for what she had spent up to the
date of his letter, and unwilling or unable to pay the larger
sum.    It may be assumed that the money previously spent
and contracts previously made by Mrs. Batterson, enhanced
the value of the land only as they might contribute to the
erection of a building which, until completed, would be worth-
less; but it would still be true that it was for the owner of
the lot, alone, to determine whether to complete it or not.
As between the parties to this suit, Mrs. Batterson occupied,
with relation to these improvements, the position of owner,
up to her receipt of the letter of August 24th, 1894; but
after that date she lost it, and the rights of the true owner
to regulate the future disposition of the property became in
equity superior to hers.    It was only for moneys already
paid and liabilities already incurred, so far as they enhanced
its value, that she had an equitable lien; but, in determining

as to such enhancement, the trier would take into consideration the character and value of the building, of which the structures already made (so far as they were permanently attached to the soil) were to form a part, and if it was one suitable to the site, might be justified in allowing all that they had cost. On the other hand a half finished house, which, if completed, would be ill adapted to its surroundings, and unlikely to prove a profitable investment, might be absolutely worthless.

There is also error in including in the amount required for redemption, the purchase money paid by Mrs. Batterson to Gayton Ballard. She received from him, as he received from the Society for Savings, not the land, but the title of the first mortgagee. *McSorley* v. *Larissa*, 100 Mass. 270. This title the plaintiff, as a junior mortgagee, had a right to acquire; but only on paying the amount equitably due on the mortgage indebtedness. This, the lot having been wholly unproductive, was the amount of the original note with interest, and all taxes upon the land paid by the Society for Savings and its assigns. It is found that the sum of these items exceeds $12,000, while the purchase money paid by Mrs. Batterson was less than $10,000. Whether the difference in amount, as between Mrs. Batterson and her predecessors in title, belongs to her or them, is of no consequence to the plaintiff. His payment is primarily due to the party from whom he seeks a conveyance of the legal title.

We have stated the principles governing the decree that should be passed, upon the issues now closed and the facts now stated upon the record. Should, however, an application by Mrs. Batterson for leave to file a proper cross-complaint be hereafter made and granted, it is not impossible that it might appear that she has an equity to redeem the plaintiff's mortgage, superior to that which he asserts to redeem hers.

The law of mortgages has been built up on a series of legal fictions. These have been created from time to time as a convenient means of defining and regulating the various estates to which such conveyances may give rise. By one

of these artificial rules, introduced in derogation of the ordi-. nary principles governing tenures of real property, the union in one person of the estates of mortgagor and mortgagee will not always effect a merger. The plaintiff's mortgage has been thus preserved in existence, notwithstanding his succession to the interest of the mortgagor, in order not to deprive him of a lien on the land which was paramount to his title by inheritance. But this lien was given to secure a debt, and in every such transaction the debt is the principal thing, and the mortgage simply a collateral incident.

The right of a mortgagee to redeem prior incumbrances and to foreclose subsequent ones is a means for the collection of his claim against the mortgagor. The plaintiff, at the time of his ·father's decease, was his creditor; but by virtue of a debt which was uncollectible, except by enforcing a certain mortgage security. The law will preserve for him the benefit of that security, so far as may be necessary to answer the end for which it was given. But others may have equities in the land, or equities against him, which will affect the means by which that end is to be accomplished. They may be such as to entitle them, if holders of mortgage incumbrances, to pay off his claim, and become subrogated to his title, even if, in the absence of such equities, he would have been entitled to pay them off and become subrogated to their title.

Mrs. Batterson fell into the mistake of assuming that she was the owner of a fee-simple estate in the land now in question. The long silence of Sidney A. Ensign and of the plaintiff, while the Society for Savings and its assigns were dealing with it as their own, and annually paying taxes on it, as such, and the terms of the letter of August 24th, 1894, by which that silence was first broken, may both have contributed to that result. Her mistake, and the expenditures to which it led, cannot defeat a recorded lien; but we do not say that they may not, by force of an estoppel *in pais* or other equitable doctrines, vary the remedies for its enforcement. The great object of a court of equity is to do equity, and the rules by which it is guided can never require the

passage of a decree which would make it an instrument of injustice. If such be ever the result of an equitable action, it must be attributable either to the fault of the parties or the error of the judge.

The various objections interposed by the plaintiff to the admission of evidence were properly overruled, for reasons which have already been sufficiently indicated.

There is error in the judgment appealed from, and it is set aside and a new trial ordered.

In this opinion the other judges concurred.