## THE AMERICAN NET AND TWINE COMPANY

*v.*

## JOHN A. GITHENS et al.

[Filed October 18th, 1898.]

Where the owners of certain tracts of land joined in executing certain con-current mortgages thereon, each of which contained a clause stipulating that, on payment of a certain specified sum on such several mortgages, a certain tract therein designated should be released from the lien thereof, the owner of such tract could discharge it from such lien by the payment of the stipu-lated amount at any time before the equity of redemption was foreclosed, not-withstanding the filing of a bill to foreclose by the holder of one of such mortgages ; but the money, with interest thereon to the date of payment and the costs to such time, should be paid into court.

*Mr. Leonard J. Tynan* and *Mr. George S. Hilton,* for the complainant.

*Mr. James G. Blauvelt,* for the defendants David M. Dema-rest and Nicholas H. Jeroleman.

*Messrs. Hawkins & Durand,* for the defendants Asbury Park and Ocean Grove Bank and William J. Larabee.

*Mr. John E. Lanning,* for the defendants John A. Githens and wife.

REED, V. C.

On March 23d, 1897, there were six pieces of land, owned as follows: Lots 1 and 2, by John A. Githens ; lot 3, by Githens and William Larabee ; lots 4 and 5, by William Larabee, and lot 6, by Mrs. Larabee, the wife of William Larabee.

Upon lot No. 1 there were two mortgages then existing, one

for $2,500, made to the Asbury Park and Ocean Grove Bank, and another for $6,500, made to the Mutual Life Insurance Company. On that date the owners of these six lots joined in executing three mortgages, each covering all the six lots. One was made to the complainant, the American Net and Twine Company, for $5,219, another to Demarest and Jeroleman, for $5,860, and the third to the Asbury Park and Ocean Grove Bank, for $5,553. These mortgages were made payable in eight months from their date, and so matured on November 23d, 1897. Each mortgage contained a clause that its lien was to be concurrent with the lien of the other two mortgages. Each also contained the following clause :

"It is understood and agreed by and between the parties hereto that when the pre-existing mortgages upon the tract of land herein described are reduced to the sum of $4,000 the tract of land herein secondly described shall be released from the lien of these mortgages, that is to say, the tract on Mattison avenue."

The clause also contained a provision that upon the payment of a certain sum, lot No. 6 should be released from the lien of the mortgages. The sum named in two of the mortgages, including complainant's, was $650, and in one of the mortgages, $700, so that a release from all three of the mortgages required a payment of $2,000 on account of the three concurrent mortgages.

It is in these provisions for the release of lots Nos. 2 and 6 that the questions mooted in this case have their root.

The American Net and Twine Company, the mortgagee in one of the three concurrent mortgages, filed its bill on January 6th, 1898, to foreclose its mortgage as a subsisting lien upon all of these lots. The various answers filed set up that the pre-existing mortgages were reduced to $4,000, by which lot No. 2 was discharged from the lien of the three mortgages, one of which mortgages was that of the complainant. The answer of the Larabees set up that the sum of $2,000 was tendered as a payment upon the three mortgages, and so lot No. 6 was discharged.

By cross-bill, the respective defendants ask for the specific performance of the agreement for the release contained in the three mortgages. It was proved on the hearing that before the maturity of the three concurrent mortgages $4,900 had been paid on the pre-existing mortgages on lot No. 1, and that after the maturity of these mortgages, but before the bill in this cause was filed, $1,100 was paid, by which payment the amount of the pre-existing mortgages was reduced to $4,000. It is proved that after the bill was filed an offer was made to the proper parties to pay $2,000 and interest upon that sum to the time of payment and the costs of suit up to that time, which payment was refused.

The first question is, does lot No. 2 stand released? I will remark that there is nothing in the fact that the money applied in the reduction of the pre-existing mortgages was in part moneys paid by the insurance company for losses incurred by a fire, which occurred previous to the execution of the concurrent mortgages. There was no agreement proved that it should be used for other purposes.

The principal insistence of the complainant is that lot No. 1 is not released because all the money by which the pre existing mortgages were reduced to $4,000 was not paid before the maturity of the concurrent mortgages. I am of the opinion that it was not essential that it should be so paid. There was no limitation as to the time of payment contained in the clause providing for the release. The case of *Reed* v. *Jones, 133 Mass.,* decided by a divided court, rests upon its own facts. The whole of the mortgaged property was a single tract owned by the same mortgagor and the parts to be released were to be selected by the mortgagee. In the present case the lots are distinct, they are held by four different titles, and the release is to operate upon particular lots described in the mortgage. The clause really provided for the release of lot No. 2 by the payment of $5,000 in reduction of the prior encumbrances upon these lots, and the right of redemption existed until it was foreclosed.

The facts in respect to the release of lot No. 6 differ from the facts in regard to the release of lot No. 2 in two particu-

lars—*first*, the money to be paid was to be paid in reduction of the concurrent mortgages, not of the pre-existing mortgages; and *secondly*, it was not paid or tendered until after this bill was filed.

The first particular manifestly creates no substantial difference. Nor, in my judgment, does the second, under the facts in this case, for I remark concerning this lot, as I have just observed in regard to the other lot, that the provision for a release fixed the sum, upon the payment of which this lot should be redeemed from the encumbrance of the mortgage.

The title of this lot was held by Mrs. Larabee alone. I think that a fair construction of the contract between her and the mortgagees was that she could discharge her lot from the lien by the payment of a stipulated amount at any time before her equity of redemption was foreclosed. She was bound, with the rest of the mortgagors, however, to pay interest upon the mortgages, and it is equitable that she should pay the interest upon the part of the debt which was in this sense imposed upon this lot. This liability was recognized by her tender. The money should have been paid into court to complete the efficacy of the tender. It may now be paid in, but the tender will only date from the time of the payment of the sum into court, and interest should be paid upon the $2,000 up to that date. She included in her tender the costs of this suit up to that time. This amount should also be paid into court.

I will not advise a decree until the expiration of fifteen days from the filing of these conclusions, within which time the defendant Mrs. Larabee may perfect her tender by paying the proper amount into court. I will then advise a decree for the execution of releases for the two lots and the usual decree to foreclose the equity of redemption in the other lots.

If the money tendered and interest are not paid within the fifteen days the decree of foreclosure will also include lot No. 6.