A. R. PAULUS, Guardian, Etc., Appellee, v. WILLIAM REED, Appellant.

**Conveyance by Incompetent:** BURDEN OF PROOF. The burden is upon the one asserting mental incapacity, and mere weakness of mind without fraud or undue influence will not avoid a conveyance.

**Degree of Incapacity.** It is not necessary to show positive idiocy or insanity to avoid a deed, a mental deficiency precluding the exercise of a deliberate judgment is sufficient.

**Conveyance to Wife:** EQUITABLE RELIEF. Where a conveyance from husband to wife has been obtained through the existing relation of trust and confidence, and it appears that the grantor was mentally weak and there is a disposition to deprive him of the benefit of the property, equity will interfere to protect his interests.

**Same.** Where the husband conveys his land to his wife and it appears that he is mentally weak and dominated in his business affairs by the wife, on her death equity will establish a trust in favor of the husband as against her heirs claiming under the law of descent.

*Appeal from Montgomery District Court.*—HON. N. W. MACY, Judge.

MONDAY, OCTOBER, 12, 1903.

ACTION in equity by plaintiff, as guardian of Tunis Van Horn, a person of unsound mind, praying that his said ward be decreed to be the owner in fee simple of certain real estate, that the defendant be decreed to have no right or title thereto, and that title be quieted in said Tunis Van Horn. There was a decree in favor of plaintiff, and defendant appeals.—*Affirmed.*

*E. C. Gibbs* and *R. W. Beeson* for appellant.

*J. M. Junkin* and *Ralph Pringle* for appellee.

BISHOP, C. J.—At the time of the trial Tunis Van Horn was about forty-two years of age. Some years ago the father of said Tunis conveyed to him a farm consisting of one hundred and sixty acres. This was done, as testified to by the mother of Tunis (the father now being dead), that he might have something for his support, to take care of himself. There was no other consideration. A short time thereafter, and about ten years ago, Tunis married Sarah Reed, a daughter of the defendant, then a young woman of about twenty-four years of age. They went to live together upon the farm. During the period of their residence there a deed of the farm was executed by Tunis to his wife. In 1899 this farm was sold, both wife and husband joining in the deed, and there was realized from the sale thereof the sum of $4,000 in cash. Some $3,000 of said sum was then invested in the land in controversy, the title being taken in the name of the wife. In 1900 said Sarah Van Horn died, intestate, and without issue. She left surviving her the said Tunis, her husband, and the defendant, her father, as her only heirs at law. The defendant makes claim to be the owner of an undivided one-half the real estate in controversy, and this action is brought to cut off and bar any such right or equity therein. The action is based upon the allegation that at all the times in question the said Tunis was of feeble and unsound mind, and wholly incapable of transacting business and executing papers, and incapable of understanding or comprehending the force or effect of his acts and transactions; that this was known to his said wife; and that she paid no consideration, valuable in character, for the property conveyed to her. The answer of the defendant presents no issue of fact save as to the alleged mental condition of said Tunis.

That there was no consideration, valuable in character, passed between Tunis and his wife, is of itself im-

·material.    It is elementary that the consideration of love
and affection will support a deed made by a husband to
his wife, there being no rights of third persons intervening.
*Mercer v. Mercer*, 29 Iowa, 558.

So, too, the law presumes every man to be sane, and
to understand the nature and effect of his acts and trans-
actions.   The burden was upon the plaintiff, therefore,

1. CONVEYANCE    to establish the fact of unsoundness of mind
by incom-        existing at the time the deed of the farm was
petent: bur-
den of proof.    made to the wife, and, failing in this, the
defendant is entitled, as under the statute provided, to
an interest in the real estate of which his daughter died
seised.   It is to be observed that fraud or undue influence
is not alleged in terms; the averment made is simply that
the deed was made.   Now, mere weakness of mind alone,
without fraud or undue influence, is not sufficient to in-
validate a conveyance, and this has been repeatedly held.
·*Campbell v. Campbell*, 51 Iowa, 713; *Burgess v. Pollock*,
:53 Iowa, 273; *Elwood v. O'Brien*, 105 Iowa, 241.

On the other hand, no one will contend that the con-
tract of a person of unsound mind, amounting in a prac-
tical sense to imbecility, should be upheld.    But it is not

2. DEGREE of     necessary, in order to defeat a contract, that
incapacity.      weakness of mind amounting to positive
idiocy or insanity be shown.   If it appears that there is a
mental deficiency so marked as that the conclusion is just-
tified that the party has not exercised any deliberate
judgment concerning the transaction in question, but, on
the contrary, has been simply as putty in the hands of a
stronger will, then it cannot be said that a contract has
been executed.   A vital element is lacking, in that there
cannot then be said to have been any meeting of minds.
Out of such a transaction there is presented the product of
but one mind.   Now, we take it that in the case of a con-
veyance by a husband to his wife, or from the wife to the
husband, the grantor being weak of mind, and a contro-

versy thereafter arises between them or those represent-
ing them, the courts will scan the transaction very closely
to discover the animus with which the contract was brought
about.    And if it shall appear that the rights and interests
of the grantor are intended to be and are being fairly sub-
served, the court may go further in upholding the convey-
ance than would be warranted in a case presenting simply
an ordinary business transaction with a stranger.    The
reasons therefor will readily suggest themselves to the
mind, and need not here be dwelt upon.

On the other hand, if a conveyance has been obtained
through the relation of trust and confidence which pre-
sumably exists between husband and wife, and there is
3. CONVEYANCE manifested a disposition to so manage or dis-
to wife: equit-
able relief. pose of the property as to deprive the grantor
of all interest therein or benefits therefrom, the courts
should and will be swift to interfere and arrest the wrong-
ful disposition of the property.    "Contracts made between
persons sustaining relations of trust and confidence, where
it appears that the stronger and controlling mind has
obtained a conveyance of property, are jealously watched
and guarded by courts of equity, and set aside, unless the
beneficiary shows the *bona fides* of the transaction."
*Spargur v. Hall*, 62 Iowa, 498; *Earhart v. Holmes*, 97
Iowa, 649.    In either case many of the substantial ele-
ments of a trust are to be found, and the principles which
find application in cases where a trust is declared upon
must be taken into account largely in arriving at a con-
clusion.    If good faith and fairness dominate the transac-
tion, and no equities appear to dictate otherwise, such a
conveyance may well be sustained; otherwise it should be
set aside.    So, too, we think a case might be presented
where such a conveyance should be set aside, even though
it appear that, as between the parties themselves, there
was no fraud or bad faith.    Take the case of a transfer of
property by a husband to his wife the former being con-

fessedly weak-minded, and the apparent object of the transfer being to make certain that the property would be properly preserved, cared for, and managed in the interests of the family (the husband, of course, included), now certainly the trust principle could be invoked as a barrier to prevent existing creditors of the wife from seizing upon the property and appropriating the same in payment of their debts.   So, too, she might not transfer such property in payment of her individual indebtedness, to the extent, at least, of interfering with the purpose for which the transfer to her was made.  Nor could she put the property beyond reach of a court of equity by making an absolute transfer thereof to a stranger, whatever may have been her real intentions in so doing.   The rights of an innocent purchaser for value would undoubtedly be protected, but the disposition of the fund would be subject to the control of the court.   Now, we are unable to see why like principles should not have application where it is made to appear that the evident purpose of a transfer has been interrupted or frustrated by accident, and in this connection we may term death an accident, when it is not anticipated in reason that it will probably intervene to destroy the purposes of the transfer.

Coming back now to the case before us, if the evidence fails to establish a want of mental capacity on the part of Tunis Van Horn to make the deed in question understandingly and comprehending the legal force and effect thereof in a reasonable degree, then we may dismiss the case from any further consideration.   If, on the other hand, it should be said that the evidence discloses a total want of capacity, the relief prayed for by plaintiff should be granted as a matter of course.   But the facts, as disclosed by the record, lie along between the two extremes.   These, in brief, appear: During childhood Tunis was afflicted with a disease which left him shattered in body and mind.   He was partially deaf

4. SAME.

and dumb and blind. His mental faculties were so far deranged that education was impossible, and he thus grew up having a more or less imperfect knowledge and comprehension of common things, and of such only, and with a very limited capacity for the association of ideas, or to reason from cause to effect. He was a charge upon his parents; capable of attending to minor duties, but not trusted in matters involving responsibility. It was not expected he would ever marry, and his parents opposed his marriage when it did take place. The woman he married was young and healthy. She had known Tunis for many years, and was fully advised of his defective physical and mental condition. There is no suggestion that she was herself feeble-minded; and, if she took pecuniary considerations into view in contemplating marriage with Tunis, such was perfectly known to her alone. 'Suffice it to say, she at once took full and complete control of all business matters, and conducted the same in her own name, and according to her own notions, down to the time of her death. To our minds, the conclusion is irresistible that on her part she took the view that she was capable of conducting their affairs and that her husband was not; that, inasmuch as she had taken upon herself the burden of his care, it was better that she should have full dominion over the property, title thereto included. It is equally conclusive that he had sense enough to recognize her strength and his own weakness, and that, without question or protest, he acquiesced in her complete dominancy. To such a case, surely, the principle of an implied trust to which we have made reference is applicable. Had she, in her lifetime, made a conveyance of an undivided one-half interest in the farm as a gift to her father, no matter what may have been the motive which prompted it, such could not have found toleration in a court of equity. No more can it be tolerated because the

gift, instead of coming by a direct conveyance, is accomplished by her unexpected death.

We conclude that equity requires that the property in question should be preserved for the benefit of the ward of plaintiff, and that the defendant has no equities therein. The decree was therefore right, and it is AFFIRMED.