Sam Ver Veer, Appellee, v. Chris Malone and Mary A. Malone, Appellants.

134   653<br>f143   111

Principal and agent: UNAUTHORIZED ACTS: RATIFICATION. One simply acting as a gratuitous agent in making occasional loans for another does not have authority to declare an obligation due and to commence foreclosure of a mortgage given to secure the same, solely on the ground that insurance furnished by the mortgagor was not satisfactory to him; and the institution of the foreclosure by the agent, with no showing of knowledge on the part of the mortgagee, cannot be construed as a ratification of the agent's act in rejecting the insurance.

*Appeal from Mahaska District Court.*—Hon. B. W. Preston, Judge.

WEDNESDAY, JUNE 5, 1907.

ACTION upon two notes, and to foreclose a mortgage securing the same. Trial to the court, judgment and decree for plaintiff, and defendants appeal.— *Reversed.*

*J. D. Bolton, D. C. Wagoner* and *L. C. Blanchard,* for appellants.

*Irving Johnson,* for appellee.

DEEMER, J.— On January 17, 1906, defendants executed two notes to plaintiff, one for the sum of $3,000. and the other for $180., each due January 11, 1911, and drawing 6 per cent. interest. To secure these notes defendants also executed a mortgage upon certain real estate in Mahaska county containing the usual stipulations and covenants, and in addition thereto the following:

It is provided, however, that the said mortgagors shall, while any part of said principal or interest remains unpaid, pay all taxes on said mortgaged property before they become delinquent, *and they shall keep the buildings thereon insured to the satisfaction of the mortgagee,* and the policy payable, in case of loss, to the holder thereof, as his interest may then appear; and in case of his failure to comply with either of these provisions the holder hereof may, at his option, cause such tax to be paid and such insurance to be effected, and may thereupon add the amount so paid by him to the sum next falling due, and shall have the above rate of interest thereon from the time of payment until repaid. It is provided that, if said mortgagor shall fail to pay installments of principal and interest as they fall due, or neglect or refuse to pay the taxes or effect the insurance as above provided for, for more than 30 days, then the holder hereof may, at his option, without giving notice, consider the principal and interest and amounts paid by him for taxes and insurance on said premises due and payable, and may, without delay, proceed to foreclose this mortgage.

This mortgage was acknowledged January 27, 1906, and filed for record January 29th. This action was commenced March 30, 1906, and the allegation in the petition which is material to our present inquiry reads as follows:

Par. 5. That since the execution of said mortgage and note and the receipt of the money from this plaintiff,

defendants have failed, refused, and neglected to cause the buildings situated on the premises described in said mortgage to be insured to the satisfaction of the mortgagee, and that said failure, neglect and refusal have existed on the part of said defendants for more than thirty days prior to the filing of this foreclosure.

Defendants denied this allegation, and also denied that the notes were due. Upon these issues there was a trial to the court resulting in a judgment and decree as prayed.

It appears that plaintiff is a nonresident. One Bennett, who is a real estate and loan agent at Oskaloosa, was applied to by defendants, or one of them, for a loan, and he (Bennett) made out the papers in plaintiff's name, after consulting with one Balduff, who is a relative of plaintiff, and who occasionally did business for him in the way of making loans. It seems that there was an old mill building upon part of the mortgaged premises, and it was agreed when the loan was made that this should be insured for $500. It seems that defendants insured this mill property for the sum of $500 in March of the year 1906 in an assessment company, to which Balduff objected because he (Balduff) did not consider such insurance good. Suit was then commenced, and defendants made application for a policy in what is called an " old line company " on April 3d, and received a policy on April 4, 1906, which was canceled by this company on April 20th. Balduff directed this suit to be commenced through an attorney, Mr. Irving Johnson, upon the ground that he (Balduff) was dissatisfied with the insurance, that this was in good faith, and that in asserting his dissatisfaction he was acting for plaintiff. Balduff's authority to act for plaintiff, as shown by the record, is as follows: " Ans. I have not done very much. When he has a little money he wants to put out on interest, he has asked me to attend to it for him. I have loaned money for him for the last four or five years at different times out of his savings from his earnings. I have invested it in mortgages

for him without pay, just as a matter of friendship. Q. Acted as his agent? Ans. Yes, sir." After the suit was brought, and after the old line policy had been procured, one of the defendants' attorneys went with them to the attorney for the plaintiff, and the following transpired: "After notice had been served Mr. Malone, he came to see me, and told me the policy had been refused. I went with him to Mr. Johnson, who, I understood, represented the plaintiff, and Mr. Johnson said that Mr. Balduff absolutely refused to have policies that were issued by these mutual companies, but insisted that other insurance be obtained. I then said we would endeavor to get some other insurance, and went to see Mr. O'Hara, and obtained a policy in the Hartford Insurance Company, issued by the Underwriters' Agency. That policy was taken to Mr. Johnson, who in a very short time returned it, and said that the policy was satisfactory in every way to Mr. Balduff, but that it would not be accepted unless the costs and expenses of foreclosure would be paid. "Q. In this suit? Ans. Yes, sir; which included $25. attorney fee. At that time I left the policy with Mr. Johnson, who brought it to me and gave it to me. I told him I would not accept it for Mr. Malone as the representative of Mr. Malone, but simply as custodian, and he went away and left it there."

We have already referred to the fact that this policy was canceled April 20th, but the exact reasons therefor are not stated. Balduff testified that he commenced this suit. Upon these facts we are to determine whether or not the notes were due when the action was commenced. The mortgage itself provides that the buildings shall be kept insured to the satisfaction of the mortgagee, and the parol testimony shows that there was to be a $500. policy upon the mill. This was procured in a mutual assessment company before this action was commenced, but one Balduff refused to accept it because he did not like that kind of insurance. Balduff clearly expressed his dissatisfaction with the insurance

and demanded other insurance, and he said in his testimony that he commenced this suit or authorized it to be commenced. He also testified that he asserted his dissatisfaction for the plaintiff. Looking now to his authority, we find that, according to his own testimony, it was very limited. He seems to have been a gratuitous agent for plaintiff, and at times made loans for him. Under such limited authority, he surely had no authority, either express or implied, to exercise a matter of personal privilege for and on plaintiff's behalf. The right to accept or reject the insurance offered was manifestly personal to the mortgagee; and assuming, without deciding, that such right might be delegated to another, such delegation must be express or necessarily implied from the situation. So far as shown, plaintiff himself has never expressed any dissatisfaction with the insurance effected by defendants, and, without such dissatisfaction being shown, the agent, Balduff, had no authority to commence this suit. If it was brought without authority, or prematurely, plaintiff should not be permitted to recover.

But it is argued that plaintiff ratified the act of his agent in expressing dissatisfaction by instituting this suit. To this proposition there are two answers. In the first place, the agent, Balduff, says that he, and not his principal, commenced the action, and there is no showing whatever that plaintiff has any knowledge even now that this suit is being conducted. Even were there a presumption of knowledge, it seems to be negatived by the agent, who testified that he had all the talk with the defendants, and that he (the agent) commenced this suit. In the second place, neither plaintiff nor his attorney was a witness in the case, and nothing appears regarding the commencement of the action, save as stated above. There can be no ratification without knowledge, and, where ratification is relied upon, this knowledge must be shown. That does not appear here. No one has attempted to testify that plaintiff himself was not satisfied with the insurance. All that appears in this connection is

that an agent without any authority in the premises was dissatisfied, and that he commenced the action for that reason. In our opinion, this is not sufficient to mature notes not due until January, 1911, save for the provision in the mortgage making them due if the buildings were not insured to the satisfaction of the mortgagee. *Hamilton v. Schlitz Co.,* 129 Iowa, 172, gives some support to the conclusions reached.

Plaintiff failed to show a right to maintain the action, and the judgment and decree must be and they are *reversed.*