BARBARA K. WELKE, JULIA S. DAVIS and VINA L. PAULSON v. SAMUEL A. WACKERSHAUSER and STELLA WACKERSHAUSER, Appellants, and CHAS. W. WACKERSHAUSER and CARRIE E. WACKERSHAUSER, Co-defendants.

**Agency:** ATTORNEY IN FACT: POWER TO SELL: EXTENSION OF AUTHORITY
1  BY PAROL. Under a power of attorney delegating the power to convey, the attorney in fact can only sell for cash, unless specifically authorized; nor can he convey the property by way of a gift: and conversations between the attorney in fact and his grantee, or between the latter and the attorney who drew the power, are inadmissible to vary its terms by extending the authority granted.

**Same:** UNAUTHORIZED ACT OF ATTORNEY: RATIFICATION: EVIDENCE.
2  Knowledge of an agent's unauthorized act is essential to a ratification, and it must be brought home to the principal having at the time a mind capable of exercising a deliberate judgment concerning the transaction. In the instant case the evidence is held to show that the principal was unable, by reason of severe illness and the administration of narcotics, to give an intelligent assent to the unauthorized sale and transfer of her land by an attorney in fact, so as to amount to a ratification.

*Appeal from Boone District Court.*—HON. W. D. EVANS, Judge.

SATURDAY. MARCH 13, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

ACTION to have established the plaintiffs' interests in a certain tract of real property and for partition thereof. The defendants Samuel A. and Stella Wackershauser denied the interests claimed by plaintiffs and asserted title in themselves to the entire premises. There was a decree for plaintiffs, and the defendants Samuel A. and Stella Wackershauser, his wife, appeal.—*Affirmed.*

*D. G. Baker,* for appellants.

*Dyer & Hull,* for appellees.

McCLAIN, J.—In the year 1900 Jacob Wackershauser, the father of the three plaintiffs and of defendants Samuel A. and Chas. W. Wackershauser, died seised in fee simple of a quarter section of land in Boone County which is the subject-matter of the present suit. His wife, Catherine Wackershauser, survived him and became owner of an undivided one-third interest in said land; each of the children above named becoming owner of a one-fifth interest in the remaining two-thirds. The interests of the other heirs in this undivided two-thirds share passed by purchase into the ownership of defendants Samuel A. Wackershauser and his wife, Stella. Subsequently, on the 20th of September, 1905, the surviving widow, Catherine Wackershauser, died, and plaintiffs contend that each inherited from her as heir an interest to the extent of one-fifteenth in the land. Defendant Samuel A. Wackershauser asserts ownership to the entire interest of the widow under a quitclaim deed executed in her behalf during her lifetime by R. D. Royster, her attorney in fact.

I. The power of attorney from Catherine Wackers-

hauser to R. D. Royster, under which the latter attempted to pass title to Samuel A. Wackershauser of said Catherine Wackershauser's interest in the property, subject to a reservation of the use and rents thereof during her natural life in consideration of "one dollar and other valuable considerations, the receipt whereof is hereby acknowledged," authorized said Royster "to make leases, sales and execute conveyances for any and all property, real and personal, owned by me, and manage and control said property in all things and for all purposes as fully as I myself might do, giving and granting unto my said attorney full power and authority to do and perform all, and every act and thing whatsoever required and necessary to be done in and about the premises as fully as I might or could do it if personally present." This power of attorney was executed within a month after the death of Jacob Wackershauser, and included in a portion thereof not above recited the authority to receive for Catherine Wackershauser rents, money or property coming to her from the estate of her deceased husband and from all other sources. According to the testimony of Royster this power of attorney was given because Catherine Wackershauser wanted him to do her business, and he told her that was the only way he would do it, and that he would not do it any other way. The quitclaim deed was executed February 13, 1901, and was recorded in April following. The power of attorney did not authorize Royster to execute such conveyance as that which he made to Samuel A. Wackershauser. Under authority to convey an agent can not sell otherwise than for cash, unless specially authorized, nor can he make conveyance by way of gift. *Wilkin v. Voss,* 120 Iowa, 500, 503; *Hampton v. Moorhead,* 62 Iowa, 91; *Payne v. Potter,* 9 Iowa, 549; 2 Jones, Conveyancing, section 1030; Mechem, Agency, sections 325, 326. Parol evidence of conversations between Royster

*1. AGENCY: attorney in fact: power to sell: extension of authority by parol.*

and Catherine Wackershauser, and between the latter and the attorney who drew the power, was, of course, not admissible to vary the terms of the instrument by extending the authority thereby conferred.

II.  Appellants rely, however, upon ratification, as to which the record shows the following facts:  Catherine Wackershauser, from a time antedating her husband's death until the date of her own death in September, 1905, was an invalid suffering from heart disease, dropsy and gallstones. For the purpose of alleviating the pain and distress from these ailments she took frequent doses of morphine under the direction of her physician.  She was on account of her dropsical condition unable to lie in bed, but slept in a chair.  She was not a woman familiar with business, and she was unable to read or write the English language.  Royster was the father of the wives of her two sons, and, having done business for her husband during his lifetime, was regarded by her as entitled to confidence.  On the day on which the quitclaim deed was executed by Royster, and during the two succeeding days, she was very sick and greatly distressed by reason of the passage of gallstones.  She was during these days constantly under the attention of her physician, who freely administered morphine to her to alleviate her suffering. This physician testifies that the morphine pills which he administered would affect the mind of one to whom they were administered to the extent that the patient would not be responsible for things done while thus under the influence of the drug, and that, after a patient would take it, it would be several days before he would get over it so as to become really himself.  On the day after the execution and delivery of the deed to Samuel A. Wackershauser, the latter, with his wife, and Royster, with his wife, were in the sickroom of Catherine Wackershauser, and the deed was brought to the attention of the latter

2. SAME: unauthorized act of attorney; ratification: evidence.

by being read to her by Mrs. Royster at the direction of the latter's husband. Royster is the only witness testifying as to this transaction, and his statement is that Catherine Wackershauser assented to the deed, and said it was all right. In view of the condition of Catherine Wackershauser at this time by reason of her sickness, distress, and the effects of morphine upon her, we reach the conclusion that she could not give an intelligent assent to the unauthorized act of Royster in executing this deed in her name. There is no other evidence that the fact of the existence of the deed was ever brought to her attention or knowledge. She had been residing with the grantee and his wife on the premises in controversy, which constituted her homestead. There was no change in her son's relation to her or to the property following the execution of the deed. Knowledge of the act to be ratified must be shown in order that an effectual ratification may be established. *Ver Veer v. Malone,* 134 Iowa, 653; *Waughtal v. Kane,* 108 Iowa, 268. While mere weakness of mind would not prevent an effectual ratification, yet the knowledge essential as the basis of ratification must be brought home to a mind capable of exercising deliberate judgment concerning the transaction; otherwise it is ineffectual. With reference to the validity of a conveyance, we have said that, while mere weakness of mind alone is not sufficient to invalidate, on the other hand, it is not necessary that the weakness shall amount to positive idiocy or insanity, and that, if there is a mental deficiency so marked as that the conclusion is justified that no deliberate judgment was exercised, the conveyance should be held invalid. *Paulus v. Reed,* 121 Iowa, 224.

Samuel A. Wackershauser has parted with nothing in reliance on this conveyance. On its face it appears to have been executed without valuable consideration. Royster testifies that the real consideration for the conveyance was that the grantee was to take care of his

mother as long as she lived, but on further examination of the witness by the court it was developed that the grantee said he would take care of his mother anyhow, and there is not the slightest evidence that the grantee has done anything in caring for his mother or otherwise which he would not have felt it to be his duty to do if no conveyance had been made.

The decree finding and determining the interests of the plaintiffs and defendants respectively in the property in controversy is *affirmed*.

Evans, C. J., taking no part.