### DONLON et al. v. DONLON.

(Supreme Court, Appellate Division, Second Department. December 30, 1912.)

1. HUSBAND AND WIFE (§ 49¾*)—GIFT BY WIFE TO HUSBAND—PRESUMPTIONS.

No presumption of fraud arises from a gift by a wife to her husband of real property in contemplation of death or in testimonial of love and affection.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 256–260; Dec. Dig. § 49¾.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. **HUSBAND AND WIFE (§ 47\*)—CONVEYANCE BY WIFE TO HUSBAND—VALIDITY.**

Under Domestic Relations Law (Consol. Laws 1909, c. 14) § 56, authorizing a wife to convey real or personal property to her husband without the intervention of a third party, such a transaction cannot be questioned by parties having no interest except an expectancy, unless the wife was incompetent or fraud was practiced upon her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 232–241; Dec. Dig. § 47.\*]

3. **DEEDS (§ 196\*)—SUFFICIENCY OF EVIDENCE—VALIDITY—COMPETENCY OF GRANTOR.**

A grantor of real property is presumed sane until such presumption is overcome by evidence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.\*]

4. **DEEDS (§ 196\*)—SUFFICIENCY OF EVIDENCE—VALIDITY—COMPETENCY OF GRANTOR.**

It will not be presumed that a grantor of real property was disqualified to do business merely because she was 60 years old.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.\*]

5. **DEEDS (§ 196\*)—SUFFICIENCY OF EVIDENCE—VALIDITY—COMPETENCY OF GRANTOR.**

The fact that a grantor of real property was weak and infirm, unable to walk or speak, of very low physical vitality, and a very weak mentality, did not justify an inference that she did not have capacity to dispose of her property or impose on her husband, to whom she transferred it, the burden of establishing freedom from undue influence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.\*]

6. **DEEDS (§ 196\*)—UNDUE INFLUENCE—GIFT BY WIFE TO HUSBAND—PRESUMPTIONS.**

The relation of husband and wife is not such a relation as raises a presumption of the existence of undue influence in connection with transactions, even though one of the parties is old and feeble both in mind and body.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.\*]

7. **FRAUD (§ 50\*)—BURDEN OF PROOF.**

Fraud, being criminal in its essence, must be proved and will not be presumed.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. § 50.\*]

8. **JUDGMENT (§ 248\*)—CONFORMITY TO PLEADINGS AND PROOF.**

Judgment in all cases must be rendered in conformity with the allegations and proofs of the parties.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 434, 439–440; Dec. Dig. § 248.\*]

Appeal from Special Term, Kings County.

Action by Stephen J. Donlon and others against Stephen A. Donlon. From a judgment setting aside a deed of real property, defendant appeals. Reversed, and new trial granted.

See, also, 144 App. Div. 936, 129 N. Y. Supp. 1120.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

George W. McKenzie, of Brooklyn, for appellant.
Max Meyer, of Brooklyn, for respondents.

WOODWARD, J.　The plaintiffs are the sons and daughter of the defendant, and they bring this action to have adjudged as void a certain deed made by one Johanna Donlon, their mother, to Stephen A. Donlon.　This deed bears date of March 8, 1910, and Johanna Donlon died on the 10th day of March in the same year, being survived by the defendant and the plaintiffs in this action; the latter being her only heirs at law and next of kin.　Johanna Donlon was, at the time of her death, about 60 years of age, and had been married to the defendant for about 40 years; the latter being about 70 years of age. In other words, Johanna Donlon appears to have been married at the age of 20 to a man 10 years her senior, and to have become the mother of his children and to have lived with him up to the time of her death, and there is no suggestion in the evidence that this relation was not as harmonious and happy as that of the average couple who have traveled over life's road together.　The complaint alleges insanity on the part of Johanna Donlon.　Alleges, upon information and belief, that:

"On or about March 8, 1910, and during the time and while Johanna Donlon was in the physical and mental condition aforesaid, and while she was of unsound mind and incapable of knowing what she was doing, and while she was incompetent by reason of her said mental condition, the defendant by undue influence, inducement, coercion, procured from said Johanna Donlon a certain instrument in writing, without any consideration whatsoever, but for an express consideration of one dollar, which instrument purports to be a deed by said Johanna Donlon conveying all her real property to the said defendant."

And further, upon information and belief:

"That the defendant at the time when said instrument was procured by him from said Johanna Donlan as aforesaid, and for a long time prior thereto, knew of the enfeebled physical and mental condition of said Johanna Donlon aforesaid, and knew that she was susceptible and liable to be easily and readily coerced, influenced, deceived, and defrauded, and contriving and intending by taking advantage of her weakened physical infirmities, and of her mental unsoundness and incapacity and incompetency aforesaid, to get from her all of her property, induced, influenced, coerced, and persuaded her by fraud, misrepresentation, and fear to submit to the plans, designs, and wishes of the defendant respecting the said real property and the said instrument, and that the defendant thereby and by the said means and contrivances, procured from said Johanna Donlon the said instrument as aforesaid."

After hearing the evidence, the learned court at Special Term gave an opinion, in which it is said:

"In this case, I do not find that there was any fraud whatever practiced by the husband upon the wife.　Neither do I find that there was any evidence of undue influence exercised by him.　Neither do I go to the extent of finding that she was insane."

So that there is not a single finding in the case (for the formal findings are in harmony with this opinion) upon which a judgment could be rendered in harmony with the allegations of the complaint.

"But," continues the learned court, "I do find that she was over 60 years of age, weak and infirm, unable to walk or speak, of very low physical vitality,

and a very weak mentality, and under these circumstances the burden is upon the husband to show that the deed received by him, a day before her death, was made as a voluntary act of hers, and was clearly and distinctly understood by her, all of which I think he has failed to do, and therefore I shall have to grant the relief asked for and set aside the conveyance."

[1] We have examined with care the cases cited by the respondents in support of this judgment, but we are clearly of the opinion that none of them go to the extent of holding that there is any presumption of fraud arising as between a husband and wife, where the latter makes a gift of her property to the former in contemplation of death, or in testimonial of that love and affection which should characterize the relation which, at common law, merged the woman in the man, together with her estate. 15 Am. & Eng. Ency. of Law, 790, 794.

[2] Whatever may have been the status of a woman at common law, she is authorized in this state by statute to convey real or personal property to her husband without the intervention of a third party (section 56, Domestic Relations Law), and unless she is incompetent, or fraud is practiced upon her, the transaction cannot be questioned by parties who have no interest beyond an expectancy.

[3] The presumption of sanity exists, until it is overcome by evidence, and the court in this case has refused to find that Johanna Donlon was insane. The court has equally refused to find undue influence or fraud.

[4] Certainly the fact that Johanna Donlon was 60 years of age does not constitute her an old woman, and, if it did, the law does not presume that an old woman is disqualified to do business. Matter of Dixon, 42 App. Div. 481, 487, 59 N. Y. Supp. 421.

[5] In a like manner, the mere fact that she is "weak and infirm, unable to walk or speak, of very low physical vitality, and a very weak mentality," does not justify an inference that she did not have the capacity to dispose of her property (Matter of Dixon, supra); nor does it impose any burden of establishing freedom from undue influence upon a husband, who is 70 years of age, and whose welfare would become a natural matter of solicitude upon the part of the woman who had lived with him for 40 years and borne and reared his children. It is the duty of the husband to guard and protect the wife, he is called upon by the law to support and protect her during her natural lifetime, and the law will not presume that he has failed in this duty.

[6] It is true, of course, that there is a well-established rule that the relation in which the parties to a transaction stand to each other is often a material circumstance, and may, of itself, in some cases, be sufficient to raise a presumption of the existence of undue influence, which is a species of fraud (Barnard v. Gantz, 140 N. Y. 249, 257, 35 N. E. 430, 432); but the relation existing between husband and wife has never been held to operate as presumptive evidence of fraud in a transaction as between themselves. "Transactions between guardian and ward, attorney and client, trustee and cestui que trust, or persons one of whom is dependent upon and subject to the control of the other, are illustrations of this doctrine," say the court in

the case last above cited, and in the later case of Ten Eyck v. Whit-
beck, 156 N. Y. 341, 353, 50 N. E. 963, 967, the court extends the
illustration to cases where "the relation between the parties is that of
parent and child, principal and agent, or where one party is situated
so as to exercise a controlling influence over the will and conduct·
of another, transactions between them are scrutinized with extreme
vigilance, and clear evidence is required that the transaction was un-
derstood," etc.   But no court has ventured to suggest that the rela-
tions existing between husband and wife were such as to raise a pre-
sumption of undue influence in and of itself, and for the very good
reason that it is not within the reason of the rule.   The husband is the
natural protector of the wife.   She is not dependent upon him; her
dependence is upon the law governing the relation and his moral ob-
ligations in the premises, and we know of nothing more in consonance
with the ideal relation than that the wife should, at the close of a long
married life, leave her property to her husband, in the full faith that
it would be distributed, under the law or by the will of the father,
in the direction in which she would have it go in the ultimate distribu-
tion.   This is especially true where, as in the case at bar, it is shown
that the property came originally from the husband, who, being the
senior by 10 years, probably anticipated that he would be first to die.

The court in Marx v. McGlynn, 88 N. Y. 357, 370, after discussing
undue influence by physical coercion, lays down the true limitation of
the rule under which the court at Special Term assumed to act, when
it says:

"There is another kind of undue influence more common than that just re-
ferred to, and that is where the mind and the will of the testator has been
overpowered and subjected to the will of another, so that, while the testator
willingly and intelligently. executed a will, yet it was really the will of an-
other, induced by the overpowering influence exercised upon a weak or im-
paired mind.   Such a will may be procured by working upon the fears or the
hopes of a weak-minded person, by artful and cunning contrivances, by con-
stant pressure, persuasion, and effort, so that the mind of the testator is not
left free to act intelligently and understandingly.   It is not sufficient, how-
ever, for the purpose of establishing undue influence, to show that the will,
is the result of affection or gratitude, or the persuasion which a friend or
relative may legitimately use;  but the influence must be such as to overpower
and subject the will of the testator, thus producing a disposition of property
which the testator would not have made if left freely to act his own pleasure,
and this kind of influence will not generally be presumed, but must be proved
like any other fact by him who alleges it.   But there are certain cases in
which the law indulges in the presumption that undue influence has been
used, and those cases are where a patient makes a will in favor of his phy-
sician, a client in favor of his lawyer, a ward in favor of his guardian, or
any person in favor of his priest or religious adviser, or where other close
confidential relationships exist.   Such wills, when made to the exclusion of
the natural objects of the testator's bounty, are viewed with great suspicion
by the law, and some proof should be required beside the factum of the will
before the will can be sustained."

In none of the adjudicated cases have the courts gone to the
extent of holding that the relation of husband and wife, sanctioned
by civil and ·ecclesiastical law, and jealously guarded by the public
policy of the state, constituted a condition which raised a presump-
tion of undue influence, even where one of the parties was old and

feeble, both in mind and body, and in the present case the person presumed to have been guilty of a fraud is older by 10 years than his alleged victim, and there is not a fact or circumstance from which the inference can be drawn that he was anything less than a dutiful husband and father, whose children are unwilling to await the orderly procession of life in order to enjoy the estate which their parents have undoubtedly brought together by their common efforts.

[7, 8] We think this is not a case for the extension of the rule of presumptions; that the facts do not bring it within the exceptions to the general rule that fraud—which is criminal in its essence—must be proved; and that the judgment in all cases must be rendered in conformity with the allegations and proofs of the parties. Wright v. Delafield, 25 N. Y. 266, 268.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs.

JENKS, P. J., and CARR and RICH, JJ., concur. THOMAS, J., concurs in result.