HENRY ADAMS ASHFORTH, FREDERICK H. ECKER AND HENRY L. SERVOSS, EXECUTORS OF THE ESTATE OF ELIZABETH MILBANK ASHFORTH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67654. Promulgated July 27, 1934.

*Clarence Castimore, Esq.*, and *Thomas B. Gilchrist, Esq.*, for the petitioners.

*Frank T. Horner, Esq.*, for the respondent.

## OPINION.

ARUNDELL: This is a proceeding for the redetermination of a deficiency in estate tax in the amount of $113,201.18. Seven assignments of error were set forth in the petition and amendments thereto, upon which issue was joined, but all of these issues have been settled by the parties, except one. The issues so settled will be given effect in the redetermination of the deficiency under Rule 50, in accordance with the agreement of the parties filed at the hearing.

The parties also stipulated certain facts, in addition to which petitioners offered the testimony of two witnesses and certain documentary evidence. The stipulation in full is here adopted as a part of our findings of fact, and so much thereof as is deemed pertinent, as well as other facts established by proof, will be set forth in connection with our discussion of the issue.

The sole issue submitted for decision is whether or not respondent erred in including in the gross estate of the decedent, at a valuation of $766,000, certain real estate situated in the town of Greenwich, Connecticut, known as " Milbank."

The decedent, Elizabeth Milbank Ashforth, died testate on March 8, 1930, and the petitioners herein are the duly appointed and qualified executors and ancillary executors of the last will and testament of the decedent.

At the time of her death the decedent was about 25 years of age, and had been in excellent health prior to her last illness, which was of only three or four weeks duration. She was married in 1925 at the age of 20, and had two children. Thereafter, in 1928, she consulted her lawyer in reference to making a gift to her husband. She had considerable income from certain trust funds, while her husband's income was small. This situation required her to pay most of the bills, which was humiliating for her husband, and she wanted him to have an independent income. She had no income-producing property in her own right except about $100,000 in stocks and bonds. She did not desire to give these securities to her husband, because they were the only assets she had upon which she could readily realize cash if occasion arose. In view of these facts, she was advised by her lawyer that the only thing she could give her husband

that would create an independent income for him was a mortgage on the real estate in Greenwich, and she expressed her willingness to do this.

The effect of the proposed transaction was fully explained to the decedent by her attorney, who told her that she was making a gift of property of the value of $700,000, which she could not recover without paying the full sum of $700,000 for it, and that she was committing herself to the payment of interest in the annual sum of $42,000. Decedent stated that she understood all this, and that it was satisfactory to her.

Decedent then signed a demand note for $700,000, bearing interest at 6 percent per annum and executed a mortgage deed in the same amount on the real estate, and delivered these instruments to her husband at his office in the presence of her attorney on April 28, 1928. A few days later the attorney sent the mortgage to Greenwich, Connecticut, to be recorded, but the instrument was thereafter returned to him and not recorded at that time for the reason that the amount of the mortgage was in excess of the assessed value of the property and recording would have had the immediate result of raising the assessment. The mortgage was recorded on April 8, 1931, after decedent's death.

Decedent's husband was also informed of the effect of the transaction, and he accepted the note and mortgage and placed them in a safe-deposit box to which his wife had no access during her lifetime. Decedent regularly paid to her husband the interest specified in the note and mortgage, from the date of delivery thereof to the date of her death.

In the preparation of her will decedent took into consideration the fact that she had already given her husband the mortgage for $700,000, and she made him the residuary legatee in her will, conditioned upon his release of the mortgage and note. She stated definitely to her lawyer, who prepared the will, that she did not want her husband to have both the mortgage and the residuary estate. After the death of decedent her husband elected to take the residuary estate under the will, and he thereupon canceled the note and executed and delivered to the trustee under the will a quitclaim deed to the property. There was no agreement or understanding between decedent and her husband that the mortgage would be canceled at any time at her request, nor was there any understanding that the husband would cancel it after her death.

The fair market value of the "Milbank" property was $766,000 on March 8, 1930.

No monetary consideration for the note and mortgage deed passed from decedent's husband to the decedent during her lifetime.

The executors of the decedent's estate, in the estate tax return filed, listed as an asset the "Milbank" property at a value of $766,-000, and claimed a deduction for the unpaid note and mortgage in the amount of $707,933.33. Presumably $7,933.33 of this amount represented accrued interest. The respondent disallowed the entire amount of the deduction so claimed.

The provisions of the Revenue Act of 1926, pertinent here, are as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

   *        *        *        *        *        *        *

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to property, * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth, * * *

Petitioners do not now claim to be entitled to deduct from the gross estate the face amount of the mortgage under section 303 (a)(1). They claim that under section 302 (a) the extent of the interest of the decedent in the "Milbank" property was not more than the value of her equity of redemption, $66,000, and no more than that sum should be included in the gross estate.

It is contended by petitioners that the legal effect of a mortgage in Connecticut is to vest legal title to the land in the mortgagee, and to leave the mortgagor with no legal title therein until performance of the condition of the mortgage. There are cases containing language which supports that view, one of which, *McKelvey* v. *Creevey*, 72 Conn. 464; 45 Atl. 4, cited by petitioners, reads in part:

The mortgagee is the owner of the land, while the mortgagor has no legal estate therein until he performs the condition. If he fails to do so, all his right to the land is gone.

But the same opinion continues as follows:

In substance and in fact, however, and except for a very limited purpose, a mortgage is regarded as mere security for the performance of the duty described in the mortgage deed; and the mortgagor is for most purposes regarded as the sole owner of the land, "as well after forfeiture as before execution of the deed, and the mortgagee has rather a power than an interest, the use of which is strictly limited to the collection of the debt or enforcement of the duty which the mortgage was intended to secure." * * * In this view of the matter, the "equity of redemption" is regarded as the land, and its owner as the owner of the land, for most purposes; while the "estate in fee" of the mortgagee is, except for a limited purpose, regarded as personal estate

and mere security. [Citing authorities.] In accordance with this view it has been held, in the following cases, that the estate of the mortgagor is subject to dower; descends to heirs; may be attached and set off on execution; may, as real estate, confer rights of settlement; is devisable and taxable as real estate; and is based upon a title sufficient to maintain ejectment,—while to the estate of the mortgagee none of these incidents attach, save the right to maintain ejectment. [Citing authorities.] As between mortgagor and mortgagee, however, it is the law of this state that the latter is regarded as having the legal title to the land * * * but he is so regarded, as appears from the cases cited, only to a limited extent and for a limited purpose. He is regarded as having the legal title, and therefore is legal owner, mainly for the purpose of obtaining, by ejectment or otherwise, the possession of the land, and holding it, in order to make his security available in payment of his debt. * * * He has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner; but the mortgagor is so regarded,—always subject, of course, to the mortgage. * * * The real interest of the mortgagee in the land is measured by the amount of his debt, and not by his deed.

See also *Downing* v. *Sullivan*, 64 Conn. 1; 29 Atl. 130; *Ensign* v. *Batterson*, 68 Conn. 298; 36 Atl. 51; *Cion* v. *Schupack*, 102 Conn. 644; 129 Atl. 854.

Under the above quoted decision we must deny the contention of the petitioners that the value of the land in question should be excluded from the gross estate up to the amount of the mortgage on the theory that the only interest which decedent had in the land was an equity of redemption. It seems to be settled under Connecticut law, except as between mortgagor and mortgagee, that the former is regarded as the owner of the land; that the latter has a power rather than an interest; that the mortgage is mere security for the debt; and that the mortgagee's power may be exercised only to secure payment of his debt.

Aside from these considerations, it is now the unquestionable rule that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers*, 281 U.S. 376, an income tax case, but equally applicable to excise taxes; *Burnet* v. *Guggenheim*, 288 U.S. 280. The practical concept is that the holder of title to realty is the owner of the land regardless of the extent to which it is mortgaged; he is so treated for local tax purposes.

Moreover, it has recently been held by the Circuit Court of Appeals for the Second Circuit that securities pledged to secure loans may not be excluded from the gross estate. *City Bank Farmers Trust Co.* v. *Bowers*, 68 Fed. (2d) 909. The opinion of the court reads in part:

The statute, Sec. 403 (a) (1), plainly meant the opposite; among the deductions allowed were "unpaid mortgages", an impossible item unless the whole value of the mortgaged property is to be included in the gross estate under

Section 402 (a), as an "interest * * * subject to the payment of charges against his estate." The regulations under the Act of 1918, (Art. 15, Regulations 37), specifically so provided; and their successors as well. Section 402 (a) was reenacted in 1921 and 1924 without change, though under a different section number; it is most unlikely that a contrary intent should have escaped expression for so long.

We accordingly hold that it was the intent of Congress as expressed in the statute to include in decedent's gross estate the full value of her real estate, undiminished by the amount of the mortgage. The intent to allow deductions for only those mortgages "contracted bona fide and for an adequate consideration in money or money's worth" is clearly expressed and it is plain that the mortgage here does not come within the class described.

There still remains the question of the power of Congress to include the value of property, in respect of which a mortgage has been given, as a measure of the excise tax. "The thing taxed is the transmission of property from the dead to the living." *Heiner* v. *Donnan*, 285 U.S. 312. Completed irrevocable transfers are not subject to death duties. *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339. Petitioners' view is that the execution and delivery of the mortgage was a completed transfer by way of gift *inter vivos*, consequently there was no transfer at death. There are cases sustaining the validity of mortgages executed and delivered as gifts, *Goethe* v. *Gmelin*, 256 Mich. 112; 239 N.W. 347; *Cooklin* v. *Cooklin*, 260 Mich. 69; 244 N.W. 232; but there are other cases holding such mortgages to be unenforceable. See *Baird* v. *Baird*, 145 N.Y. 659; 40 N.E. 222, in which it is said: "It is the debt which gives the mortgage vitality as a charge upon the land, and generally, where there is no debt or obligation, there is no subsisting mortgage." Also *Sheehy* v. *Kane*, 235 N.Y.S. 882, holding that a mortgage given without consideration was "a voluntary and unenforceable promise of an executory gift." Whatever may be the local rules in such cases, in construing the provisions of the successive Federal estate tax acts "there has been a steady widening of the concept of a transfer." *Burnet* v. *Guggenheim, supra*. This is illustrated by such cases as *Tyler* v. *United States*, 281 U.S. 497, dispelling the doubt that previously existed as to whether upon the death of a spouse there was a taxable transfer in respect of property held by the entirety, and *Chase Nat. Bank* v. *United States*, 278 U.S. 327, holding that the termination by death of a power of disposition may be the legitimate subject of a transfer tax. Upon the death of petitioner's decedent there was a transfer of her interest, which was that of owner in fee. True, the value of that interest had been diminished by the giving of the mortgage, but not irrevocably so. The diminution was conditional and the value was subject to restoration in the mortgagor in full by per-

formance of the condition of the mortgage. The statute gives recognition to the existence of situations where there has been a diminution of value through bona fide encumbrances and allows deductions therefor. The allowance of deductions is a matter of legislative grace, *New Colonial Ice Co.* v. *Helvering*, 292 U.S. 435; *Helvering* v. *Independent Life Ins. Co.*, 292 U.S. 371, and a claim for deductions must come clearly within the conditions prescribed. The mortgage here does not meet the statutory condition of having been contracted " for an adequate and full consideration in money or money's worth." Cf. *Latty* v. *Commissioner*, 62 Fed. (2d) 952. Gifts in contemplation of death reduce the amount and value of property passing at death, but the statute not only does not allow any deduction therefor, but treats such gifts as taxable transfers; and this has been sustained as a permissible measure " to secure equality of taxation, and prevent evasion of estate taxes." *Milliken* v. *United States*, 283 U.S. 15. To allow deductions for mortgages given without monetary consideration to those who would be the natural objects of a decedent's bounty would afford an easy means of escaping death duties, and we think it was within the power of Congress to refuse deductions in such cases.

The case of *City Bank Farmers Trust Co.* v. *Bowers*, *supra*, involved the estate of a nonresident alien and in such cases the Revenue Act of 1918 allowed deductions for expenses, mortgages, etc., not in excess of 10 percent of that part of the gross estate situated in the United States. The court intimated a doubt as to the validity of such limitation if it were applied to residents. But that question was not directly involved and the court did not specifically decide it. Moreover, the debts which were there under consideration appear to have been contracted bona fide and for an adequate and full consideration, which is an important distinction between that case and this. It may be confessed that the question presented here is not entirely free from doubt, but in view of the considerations above set out, the statute is not so clearly arbitrary and capricious that we are prepared to say it violates the Fifth Amendment without more direct authority than we now have. The inclusion of the full value of the property in the gross estate and the respondent's refusal to allow a deduction for the mortgage are accordingly sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

TRAMMELL, dissenting: I am unable to agree with the conclusion reached in the majority opinion for the reason that if a valid, completed gift of the mortgage in question was made by the decedent to her husband prior to death and not in contemplation of death,

then the result is to construe the statute as requiring the inclusion in the gross estate of the value of property which did not belong to the decedent at the time of her death and was *not* transferred or affected thereby.

This case presents two fundamental questions, namely (1) whether or not the execution and delivery of the note and mortgage by decedent to her husband constituted a valid, completed gift, and, if so, (2) whether or not such transfer was *in fact* made in contemplation of death.

If a valid gift was made, respondent does not contend that it was *in fact* made in contemplation of death, nor would the facts support such a contention. Decedent was then a young woman in good health, and might reasonably have been expected to live for many years. She desired for sufficient reason to provide her husband with a permanent, independent income, and to that end executed and delivered the instruments in controversy. Plainly she was not moved by contemplation of death.

That she intended to and did make a valid, irrevocable gift must be conceded, we think, unless her acts, as a matter of fact of law, fell short of the intended goal. Whether decedent succeeded in her intention depends upon whether a mortgage, with the accompanying note representing the indebtedness secured thereby, may be the subject of a gift under the facts of this case.

It has been held that a mortgage resting upon a consideration of love and affection may be enforced where the relationship between the parties is such as would support an absolute deed, and it is well settled by the weight of authority that a conveyance from one spouse to the other requires no pecuniary consideration to make it valid; that their relationship is sufficient to render love and affection between them a good consideration. *Monroe* v. *Page*, 111 U.S. 117; *Atwater* v. *Seely*, 2 Fed. 133; *Hellyer* v. *Hellyer* (Ia.), 112 N.W. 196; *Fitzgerald* v. *Fitzgerald* (Mass.), 47 N.E. 431; *Woodsworth* v. *Tanner* (Mo.), 7 S.W. 104; *Fretz* v. *Roth* (N.J.), 64 Atl. 152; *Morris* v. *Patterson* (N.C.), 105 S.E. 25; *Kent* v. *Tallent* (Okla.), 183 Pac. 422; *Arbaugh* v. *Alexander* (Ia.), 146 N.W. 747. Where a conveyance is made by one spouse to the other a valuable consideration is necessary only when the rights of third persons otherwise would be prejudiced. *Koopman* v. *Mansolf* (Mont.), 149 Pac. 491; *Acker* v. *Pridgen* (N.C.), 74 S.E. 335. "It is elementary that the consideration of love and affection will support a deed by a husband to his wife, there being no rights of third persons intervening." *Paulus* v. *Reed* (Ia.), 96 N.W. 757. And a presumption of fraud does not arise from a gift by a wife to her husband of real property in testimonial of love and affection. *Donlon* v. *Donlon*, 138 N.Y.S. 1039.

The mortgage in this case, then, can not be said to have been invalid merely because it was given by the wife to her husband, without pecuniary consideration. But may such a mortgage be the subject matter of a gift? Does it represent an executed gift, or, prior to payment, is it merely in the nature of a voluntary executory agreement to give in the future?

A mortgage given without valuable consideration is invalid if the parties never intended that it should be enforced, *Colt* v. *McConnell* (Ind.), 19 N.E. 106, or if it was fraudulently obtained, *Moffet* v. *Parker* (Minn.), 73 N.W. 850, but the authorities are in agreement that a mortgage may be the subject of a gift if the parties so intend, and is enforceable, irrespective of money consideration, where the rights of third parties are not infringed.

In *Campbell* v. *Tompkins*, 32 N.J.Eq. 170; 172 (affd., 33 N.J.Eq. 362), the doctrine is stated by the court as follows:

It can not be doubted that even now a valid mortgage may be given where no valuable consideration exists. Otherwise the absolute control of the owner over his property is taken away, for he would not be permitted to give it away in his lifetime by deed. The mere fact that there was no consideration would not now render the mortgage invalid. A mortgage may be sustained as against all except creditors whose claims existed at the time of giving it, although it was intended merely as a gift; and, when executed and delivered, it is as valid as if it were based upon a full consideration, *and it is not open to the objection that it is a voluntary executory agreement, but it may be enforced according to its terms as an executed conditional transfer of the real estate mortgaged* [Citing authorities]. [Emphasis supplied.]

In *Betts* v. *Betts*, 41 N.Y.S. 285 (affd., 159 N.Y.S. 547; 54 N.E. 1089), the court held that a husband could make a valid gift to his wife of mortgages on property owned by him, saying:

That the mortgages could be made the subject of a gift from the husband to the wife appears to be settled by authority. *Bucklin* v. *Bucklin*, 1 Abb. Dec. 242; *Van Amburgh* v. *Kramer*, 16 Hun. 205; *Bolen* v. *Bolen*, 44 Hun. 362. In the case first cited a mortgage by a father to a trustee, in order to make a voluntary provision for his infant child, was upheld as being as valid in every respect as would be a transfer for a full pecuniary consideration, the contract being executed, and there being no intervening rights of creditors. Chief Justice Denio, who wrote the opinion of the court, said: " There are cases in which a voluntary executory gift will not be enforced by the courts, but an executed one is as valid as though based on a full pecuniary consideration." In the second case, which arose in this department, Gilbert, J., said: " The evidence in this case merely shows that the bond and mortgage in suit were not made upon a valuable consideration. But there are other considerations which are sufficient in equity to support transactions between husband and wife, when the claims of creditors do not interfere. Indeed, it has been held that a bond and mortgage may be made by way of a gift." In the third case, which was also decided by the general term of the second department, the facts were distinguished from those of *Bucklin* v. *Bucklin*, supra, but the

authority of that decision was fully recognized. It seems to us that it must be deemed controlling here in support of the validity of the gift of the mortgages in suit.

While it is true in the instant case that decedent executed and delivered to her husband both a promissory demand note and a mortgage, the note alone was not the subject of the gift. The note represented merely the obligation secured by the mortgage. The note itself was an executory agreement to pay in the future, and, so far as it involved personal liability apart from the mortgage, did not constitute an executed gift, but, as stated by the court in *Campbell* v. *Tompkins*, *supra*, the mortgage constituted " an executed conditional transfer of the real estate mortgaged." And see *Bucklin* v. *Bucklin*, 1 Abb. Dec. 242, where it was also stated that "A mortgage is an executed conditional transfer of the real estate mortgaged."

This point was considered by the Supreme Court of Michigan in *Goethe* v. *Gmelin*, 239 N.W. 347, in which state the theory of the law of mortgages is substantially the same as in Connecticut. It is said in the court's opinion:

The trial court found that the mortgage was given to secure a note executed by the mortgagors without consideration therefor. This holding is supported by the evidence. Based upon the holding of this court in *Graham* v. *Alexander*, 123 Mich. 168, 81 N.W. 1084, he held that the note was but a promise to make a gift in the future, and such gift not having been executed during the lifetime of the donor, it is not valid as a contract to be executed. * * * Were the claim here made against the estate of the mortgagors based upon the note, the rule as stated would apply. We find no authority extending this rule to a mortgage, although it be security for the payment of a note.

On the question whether a voluntary mortgage may be the subject of a gift, the court further stated:

In *Brigham* v. *Brown*, 44 Mich. 59, 62, 6 N.W. 97, 98, it was said: "Nevertheless, a man may give a voluntary mortgage if he chooses, and it is fraudulent only as to those who are or would be defrauded by it (*Gale* v. *Gould*, 40 Mich. 515) ; and no one would be defrauded in contemplation of law, who was merely a subsequent mortgagee with notice, actual or constructive, of the voluntary instrument."

The rule thus stated has been accepted by text-book writers.

"A mortgage may be made by way of a gift, when the rights of creditors are not thereby interfered with." Aldrich, Real Property Mortgages, §180.

"A mortgage may be made by way of a gift, when the rights of creditors are not thereby interfered with. When executed and delivered it is as valid as if it were based upon a full consideration. *It is not open to the objection that it is a voluntary executory agreement, but may be enforced according to its terms as an executed conveyance.*" 2 Jones on Mortgages (8th Ed.), §756. [Emphasis supplied.]

See also the decision of the same court in *Cooklin* v. *Cooklin*, 244 N.W. 232, where it was pointed out that it is not even necessary that a mortgage be accompanied by a note, provided the mortgage itself contains a promise to pay.

By execution and delivery of the mortgage in controversy, decedent definitely decreased the value of her estate to the extent of $700,000, and her husband acquired unconditional ownership of property of that value as effectively as if the subject matter of the gift had been tangible property. She could not recover the mortgage except by payment in accordance with its terms. It was a presently executed gift, not intended to and did not in fact take effect in possession or enjoyment at or after the donor's death. The transfer was complete upon delivery of the instrument, and no incident of ownership was affected by her death, nor was there any shifting of economic benefit in the property which was the subject of the gift, as a result of death. It is true that under the mortgage decedent had a right to redeem the real estate, which right had a value of $66,000, and this equity of redemption passed to her estate upon her death, but such transfer or shifting of that property right did not pertain to nor affect the ownership and rights of the husband in the $700,000 mortgage. Admittedly the property right so transmitted from the dead to the living as a result of decedent's death is includable in her gross estate at its agreed value of $66,000, but death was not the "generating source" of the gift of the mortgage. Such gift bore no relation whatever to death.

In *Heiner* v. *Donnan*, 285 U.S. 312, the Court held that section 302 (c) of the Revenue Act of 1926, in so far as it required that certain transfers made without consideration within two years of the donor's death should be deemed made in contemplation of death, was void under the due process clause of the Fifth Amendment, and that transfers *inter vivos*, not in contemplation of death, can not be made subject to a death duty, though the donor's death occurs thereafter. The question considered by the court in that case was substantially the same as is presented here, and the principles applied there, it seems to me, are equally applicable here. In pertinent part the Court said:

SEC. 301 (a) of the Revenue Act of 1926 * * * imposes a tax "upon the transfer of the net estate of every decedent" etc. There can be no doubt as to the meaning of this language. The thing taxed is the transmission of property from the dead to the living. It does not include pure gifts inter vivos. The tax rests in essence "upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. * * * It is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." * * * The value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of the decedent for the purpose of a death tax, because the transfer is considered to be testamentary in effect. * * * But such a transfer, not so made, embodies a transaction begun and completed wholly by and between the living, taxable as a gift * * * but obviously

not subject to any death duty, since it bears no relation whatever to death. The "generating source" of such a gift is to be found in the facts of life and not in the circumstance of death. And the death afterward of the donor in no way changes the situation; that is to say, the death does not result in a shifting, or in the completion of a shifting, to the donee of any economic benefit of property, which is the subject of a death tax * * *; nor does the death in such case bring into being, or ripen for the donee or anyone else, so far as the gift is concerned, any property right or interest which can be the subject of any form of death tax. * * * Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or ceases in the other in consequence of the death which happens afterward.

\*      \*      \*      \*      \*      \*      \*

That a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment is settled. *Nichols* v. *Coolidge*, 274 U.S. 531, 542* * *

\*      \*      \*      \*      \*      \*      \*

Moreover, under the statute the value of the gift when made is to be ignored, and its value arbitrarily fixed as of the date of the donor's death. The result is that upon those who succeeded to the decedent's estate there is imposed the burden of a tax, measured in part by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description. Plainly this is to measure the tax on A's property by imputing to it in part the value of the property of B, a result which both the *Schlesinger* and *Hoeper* Cases condemned as arbitrary and a denial of due process of law. Such an exaction is not taxation but spoliation.

That the statute involved here is arbitrary, capricious, and confiscatory, when applied to the facts of the instant case, is easily demonstrable. It measures the tax on property of the decedent's estate by imputing to it in part the value of property belonging to decedent's husband, which he acquired by gift from his wife during her lifetime and in respect of which property no interest of any kind, in so far as concerns the gift, remained to pass to the one or ceased in the other in consequence of decedent's death.

The statute also, in the circumstances here, is unreasonably discriminative. If A die leaving an estate of $800,000, without debts, and B die leaving an estate of the same amount, against which there is a mortgage for $700,000, given without money consideration and therefore not deductible under the provisions of the statute, each estate would pay the same tax, notwithstanding B during his life had made a completed and valid gift of the mortgage, the value of which belonged to and inevitably went to the donee, leaving only $100,000 of property belonging to B's estate or in which the estate had any interest. Or, if A die leaving an estate of $800,000 but having debts contracted or mortgages given for money consideration in the amount of $700,000, A's estate would pay a tax on the basis of

a net value of $100,000, while B's estate would pay a much larger tax on the basis of a net value of $800,000, yet in each case the net value of the property transmitted to his estate by the decedent would be the same.

And, further, it is apparent that cases might well arise where the value of the property remaining over and above the amount of the nondeductible mortgage would not be sufficient to pay the tax imposed by the statute, leaving nothing for distribution. Such a situation, where an excise tax is imposed on the transfer of property and no property is transferred as a result of death, would indeed be anomalous. This would be true in the instant case if the gross value of the decedent's estate had not exceeded $750,000. As stated by the Court in *Nichols* v. *Coolidge*, 274 U.S. 531:

Certainly Congress may lay an excise upon the transfer of property by death reckoned upon the value of the interest which passes thereby. But under the mere guise of reaching something within its power Congress may not lay a charge upon what is beyond them.

. * * * * * * *

The statute requires the executors to pay an excise ostensibly laid upon transfer of property by death * * * to them but reckoned upon its value plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death. * * *

Under the theory advanced by the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution.

The case at bar, I think, is readily distinguishable from *Tyler* v. *United States*, 281 U.S. 497, where it was held that statutes requiring the inclusion in the gross estate, for estate tax purposes, of the value of property held by tenants by the entirety were not unconstitutional as imposing a direct tax without apportionment, nor so arbitrary and capricious as to result in deprivation of property without due process of law. In that case the court pointed out that as a direct result of the death of one spouse there passed to the survivor substantial rights in respect of the property, including exclusive possession, use, and enjoyment, and the power, not theretofore possessed, of disposing of the property unconditionally. "Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other."

Here the death of the decedent was not the "generating source" of any accession to the property rights of the husband in respect of the gift, and as a result of her death he did not acquire the exclusive possession, use, and enjoyment of the property, nor did he acquire

thereby the power not theretofore possessed of disposing of the property according to his sole will. On the contrary, he possessed all of those things prior to the death of his wife.

For the reasons hereinabove indicated, it is my opinion that the statute under consideration is ineffective to require the inclusion in decedent's estate, subject to tax, of the real estate referred to at a valuation in excess of $66,000, which represents the value of the interest of the decedent therein which was transmitted as a result of death.